540 P.2d 214

Claire FUTRELL, Robert Holliday, James W. King, Thomas James Murray and Julia Thorson, Individually and in behalf of all others similarly situated, Plaintiffs-Appellants,

v.

R. L. AHRENS, Seaborn Collins, Malcolm Garrett, Avelino Gutierrez and William Humphreys, Members of the Board of Regents of N. M. State University, and Gerald Thomas, President of N. M. State and Richard Pesquiera, Vice President for Student Affairs of N. M. State University, and New Mexico State University, Defendants-Appellees.

No. 10094.

Supreme Court of New Mexico.

Aug. 20, 1975.

Paul A. Phillips, John E. Thorson, Albuquerque, for plaintiffs-appellants.

Darden, Sage & Darden, Las Cruces, for appellees.

## OPINION

OMAN, Justice.

The plaintiffs, students at New Mexico State University, brought suit to enjoin the defendants, members of the Board of Regents of the University, from enforcing a regulation which prohibited visitation by persons of the opposite sex in residence hall, or dormitory, bedrooms maintained by the Regents on the University campus, except when moving into the residence halls and during annual homecoming celebrations.

We refer to the rooms as bedrooms, because this is primarily the nature and use made of these rooms. However, they are also intended for use and are equipped as private study rooms. Not all of the plaintiffs reside in the residence halls, but, according to the form contract signed by each of those who do, the University is required to furnish the student with a single bed, chest of drawers, desk and chair, closet space, bed linen and towels. The Regents place no restrictions on intervisitation between persons of the opposite sex in the lounges or lobbies of the residence halls, the Student Union Building, library or other buildings, or at any other place on or off the campus. No student is required by the Regents to live in a residence hall.

Plaintiffs' contentions in the district court were that the regulation is constitutionally impermissible and arbitrary, capricious and unreasonable. The district court dismissed the complaint for failure to state

a claim upon which relief could be granted. Plaintiffs have appealed. We affirm.

The grounds relied upon for reversal are that the regulation impinges on plaintiffs' constitutional rights of free association and privacy, violates article II, §§ 4 and 18 of the Constitution of New Mexico, and is invalid as being arbitrary and unreasonable.

The right of association, although not expressly recited in or created by the language of the first amendment to the Constitution of the United States, has long been recognized as implicit within and emanating from the rights therein expressly guaranteed and made applicable to the states by the due process clause of the fourteenth amendment to the Constitution of the United States. *N.A.A.C.P. v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed. 2d 1488 (1958); Annot., 33 L.Ed.2d 865 (1973). This right has received recognition in connection with group associations. Annot., *supra.* Insofar as we are able to ascertain, it has never been held to apply to the right of one individual to associate with another, and certainly it has never been construed as an absolute right of association between a man and woman at any and all places and times.

The cases of *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) and *Martin v. Struthers,* 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), upon which plaintiffs rely, do not give any particular aid or support to their contention. The majority in the Moreno case held an "unrelated person" provision in § 3(e) of the Food Stamp Act of 1964, 7 U.S.C. § 2012(e), as amended in 1971, 84 Stat. 2048, created "an irrational classification in violation of the equal protection component of the Due Process Clause of the Fifth Amendment." It is true that in his concurring opinion, Justice Douglas relied, at least in part, on the "right of association, protected by the First Amendment," and he found an expression of this right by the poor in "congregating in households where they can better meet the adversities of poverty." Even if we were to agree with the position of Justice Douglas, we would not be persuaded to extend the constitutional right of association so far as to compel us to strike down the limited regulation against intervisitation between men and women with which we are here concerned.

■ We fully agree with the decision of the majority in the Tinker case, which did not involve the right of association, that neither students nor teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate; that school officials do not possess absolute authority over their students; and that among the activities to which schools are dedicated is personal communication among students, which is an important part of the educational process. However, we find in none of these expressions of rights, limitations on authority, or purposes of the educational process even a suggestion that the Regents are totally powerless to control intervisitations between men and women students in the residence hall rooms owned and maintained by the Regents.

In the Martin case, a municipal ordinance, forbidding persons to knock on doors, ring doorbells or otherwise summon occupants of residences to their doors for the purpose of delivering to them handbills or circulars, was held invalid as a denial of freedom of speech and of the press, insofar as it sought to forbid the distribution of leaflets advertising a religious meeting. We are unable to read into this holding a right on the part of the students of the opposite sex to unrestrained visitations with each other in the University residence hall bedrooms.

The district court in dismissing plaintiffs' complaint relied in part upon the rationale of the opinion in *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974). Plaintiffs argue that the district court misread the opinion in that case, and, consequently, was led

into error. However, the Regents insist this is not so, and that the rationale which prompted the court in that case to uphold the validity of the zoning ordinance there in question should prompt us to uphold the regulation here in question. Frankly, we don't understand how either side can get any appreciable comfort from that opinion. However, we do agree with the district court that the recognition, by the majority in the Belle Terre case, of the right of the municipality under its police power to create environmental conditions conducive to and protective of "family values, youth values, and the blessings of quiet seclusion," suggests authority in the Regents to create in its residence hall rooms areas of quiet seclusion conducive to safety, study and reflection.

■ Although, as above stated, we agree that personal intercommunication among students at schools, including universities, is an important part of the educational process, it is not the only, or even the most important, part of that process. In any event, we cannot believe that the restraint imposed by the regulation in question appreciably interferes—if at all—with the intercommunication important to the education of the students at the University. Even assuming that the right of association is being infringed by the challenged regulation, such right, emanating from the first amendment, is not absolute. Its exercise, as is the exercise of express First Amendment rights, is subject to some regulation as to time and place. *Adderly v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L. Ed.2d 149 (1966); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). The power to control, manage and govern the University is vested in the Regents. N.M.Const. art. XII, § 13; §§ 73–26–4, 5 and 6, N.M.S.A.1953 (Repl.Vol. 11, pt. 1, 1968). The proper exercise of this power necessarily includes the exercise of broad discretion. An inherent part of the power is that of requiring students to adhere to generally accepted standards of conduct. *Healy v. James,* 408 U.S. 169, 92

S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Esteban v. Central Missouri State College,* 415 F.2d 1077 (8th Cir. 1969), cert. denied, 398 U.S. 965, 90 S.Ct. 2169, 26 L.Ed.2d 548 (1970). We believe, and certainly would not dispute, that the prohibition embodied in the regulation in question is consistent with generally accepted standards of conduct.

In the case of *Lynch v. Savignano,* Civil No. 70–375–F (D.Mass., Oct. 6, 1970), the plaintiffs were students at Westfield State College, an educational institution owned and controlled by the Commonwealth of Massachusetts. An attack was made by plaintiffs upon regulations and policies of the defendants, the president and administrative cabinet of the college. One of these regulations provided: "Residents of dormitories are prohibited from associating with persons of the opposite sex in their rooms." The court's opinion concerning the attack on this regulation, with which we agree, follows:

"It is contended that this regulation unconstitutionally abridges plaintiffs' rights to freedom of assembly and freedom of association.

"The regulation applies only to students rooms and other areas are provided in the dormitory buildings and elsewhere on the campus where students of both sexes can meet.

"Defendants have the right and indeed the duty to adopt reasonable regulations to maintain order and discipline and promote an environment conducive to the educational development of the students. The subject matter of the regulation attacked is clearly a proper one for some regulation by defendants. It is true, as indicated by some evidence produced at the hearing, that the regulation at Westfield is stricter than the similar regulations at other educational institutions. However, the issue here is whether the regulation adopted by defendants is one which for valid purposes relevant to the educational objectives of the institution, imposes a reasonable limitation on stu-

dent activities. The court finds for obvious reasons that the regulation is a reasonable one."

The case of *Buehler v. College of William and Mary,* Civil No. 62–70–NN (E.D. Va., Apr. 6, 1970), involved a violation by two students of the opposite sex of a dormitory intervisitation restriction which provided: "The student will not entertain or receive guests of the opposite sex in his or her room."

As to the authority of the college—a state supported institution—to adopt this "no visitation" rule, the court held:

"As this Court has stated, it is entirely satisfied that the rule against receiving or entertaining guests of the opposite sex in the dormitory rooms at William and Mary College is entirely consonant with reasonable rules of discipline. The Court is satisfied that such rule does not violate any rights of privacy or association."

In support of their contention that the regulation with which we are concerned in the present suit violates their right of privacy, plaintiffs rely upon *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). None of these cases *supports plaintiffs' position.*

They next contend the regulation violates their "rights of enjoying * * * life and * * * seeking * * * happiness," as guaranteed by article II, § 4 of the Constitution of New Mexico, and offends against the equal rights amendment found in article II, § 18 of the Constitution of New Mexico, which requires that: "Equality of rights under law shall not be denied on account of the sex of any person." They finally contend that the regulation is arbitrary and unreasonable. However, they cite no authority for their position on any of these grounds.

 We are unwilling to hold that the Regents, who have the power and the duty to enact and enforce reasonable rules and regulations for the conduct of the University, have infringed upon the plaintiffs' constitutionally protected rights by its regulation against intervisitation of men and women in a dormitory room. We hold, as did the district court, that the regulation is reasonable, serves legitimate educational purposes, and promotes the welfare of the students at the University.

The order dismissing plaintiffs' complaint should be affirmed.

It is so ordered.

STEPHENSON and MONTOYA, JJ., concur.