697 P.2d 493

Max OTERO, Plaintiff-Appellee,
Plaintiff-Appellant,

v.

Raymond L. ZOUHAR,
Defendant-Appellant,

and

Albuquerque Anesthesia Services Ltd.,
and Louise Layne,
Defendants-Appellees.

Nos. 7414, 7455.

Court of Appeals of New Mexico.

May 10, 1984.

complaint was filed in the district court on December 4, 1981. The complaint was filed before any application was made to the medical review commission to review the malpractice claims. The three defendants sought dismissal of the complaint on the basis that the lawsuit was filed in violation of the Medical Malpractice Act. NMSA 1978, §§ 41–5–1 to 41–5–28 (Repl.Pamp. 1982). The specific claim was that the filing of the lawsuit violated Section 41–5–15(A). The trial court granted the motions of Layne and the Corporation; plaintiff appeals. The trial court denied Zouhar's motion; we granted Zouhar's application for an interlocutory appeal. We consolidated the appeals. The issues group into three categories: (1) applicability of Section 41–5–15(A); (2) constitutional claims not specifically involving Section 41–5–15(A); and (3) constitutional claims involving Section 41–5–15(A).

**1. Applicability of Section 41–5–15(A)**

This statute provides: "No malpractice action may be filed in any court against a qualifying health care provider before application is made to the medical review commission and its decision is rendered."

Each of the three defendants is a qualified health care provider. *See* § 41–5–5. *After* the complaint was filed, applications were made to the commission and decisions were rendered. Our starting point is that plaintiff violated Section 41–5–15(A). *See also* § 41–5–14(D). Plaintiff argues that the statute should not be applied. His contentions, and our answers, follow.

▪ (a) Concerning Section 41–5–15(A), *Perez v. Brubaker*, 99 N.M. 529, 660 P.2d 619 (Ct.App.1983) states: "The language of the statute is clear. The jurisdictional prerequisite is that there must be application made to the medical review commission and its decision on the application before the action can be filed in the trial court." *Saiz v. Barham*, 100 N.M. 596, 673 P.2d 1329 (Ct.App.1983), referred to the statutory requirement as a "condition precedent." Plaintiff's argument is that we should overrule *Perez*. Plaintiff overlooks the fact

William G. Wardle, Bruce D. Black, Campbell, Byrd & Black, P.A., Santa Fe, for defendant-appellant.

Harris L. Hartz, Miller, Stratvert, Torgerson & Brandt, P.A., Albuquerque, for defendants-appellees.

Douglas G. Voegler, Marchiondo & Berry, P.A., Albuquerque, for plaintiff-appellee in No. 7414 and plaintiff-appellant in No. 7455.

**OPINION**

WOOD, Judge.

Zouhar is a physician, Layne is a nurse and the Corporation (Albuquerque Anesthesia Services, Ltd.) is asserted to be their employer. Plaintiff sued these defendants for medical malpractice allegedly occurring in the preparation and administration of an anesthetic. The date of the asserted malpractice was December 8, 1978. Plaintiff's

that the statutory language is clear. As *Saiz* states in connection with other language in the Medical Malpractice Act: "Plaintiff asks us to disregard the statutory wording. We are to give effect to the statute as enacted. *State v. Elliott*, 89 N.M. 756, 557 P.2d 1105 (1977)."

(b) Plaintiff mailed an application to the commission on December 7, 1981, in connection with Zouhar. The record indicates the commission received this application on December 10, 1981. Plaintiff and Zouhar dispute whether the mailing was sufficient; Zouhar contends that no "application is made" until the application is received by the commission. Because the application was not received until December 10, 1981, Zouhar contends the three-year limitation period of Section 41–5–13 had expired before application was made. We need not resolve this issue. We assume, but do not decide, that the application mailed December 7, 1981, invoked the tolling provisions of Section 41–5–22. The only lawsuit against Zouhar is the one commenced by the complaint filed December 4, 1981. NMSA 1978, Civ.P.R. 3 (Repl.Pamp.1980). A commission panel rendered its decision by letter dated March 4, 1982. The tolling provisions of Section 41–5–22 and the three-year limitation provision of Section 41–5–13 expired sometime ago. To avoid the running of the limitation period, plaintiff must contend that the complaint filed December 4, 1981, was properly filed. Thus the applicability of Section 41–5–15(A) is not to be avoided on the basis of when the application was made.

(c) The trial court denied Zouhar's motion to dismiss on the basis that filing the complaint on December 4, 1981, and mailing an application on December 7, 1981, was substantial compliance with Section 41–5–15(A). The trial court's ruling was incorrect. The statute speaks in terms of "no action" in court prior to application to, and a decision by, the commission. This mandatory language indicates there is no room for "substantial compliance"; either there was compliance or there was not compliance. *See Oda v. Elk Grove Union*

*Grammar School District*, 61 Cal.App.2d 551, 143 P.2d 490 (1943). However, even if there could be "substantial compliance" with the statute, there was no substantial compliance in this case. "Substantial compliance" with a statute occurs when the statute has been followed sufficiently so as to carry out the intent of the statute. *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 650 P.2d 3 (Ct.App.1982); *cf. State ex rel. Sun Company, Inc. v. Vigil*, 74 N.M. 766, 398 P.2d 987 (1965). The filing of a complaint before application to the commission, and before any decision by the commission, was not substantial compliance with Section 41–5–15(A).

(d)(1) Plaintiff applied for commission review, in connection with Layne and the Corporation, in early March 1982. This was more than three years from the date of the alleged malpractice. However, the complaint, filed December 4, 1981, was within the three-year period. Thus the propriety of dismissing the complaint against Layne and the Corporation also depends on the applicability of Section 41–5–15(A). Plaintiff asserts that this statute does not apply as to these two defendants because at the time the complaint was filed plaintiff's information, incorrect, was that Layne and the Corporation were not qualified health care providers. It is not disputed that this misinformation was supplied to an employee of plaintiff's attorney by an employee of the Department of Insurance a "few days prior to December 4, 1981 * *." Plaintiff refers us to deposition testimony indicating the records of the Department of Insurance were incomplete as to these two defendants. Asserting that the Department of Insurance was the only source of the information sought, plaintiff's position is that he did all he could do to determine whether these two defendants were qualified health care providers and, thus, Section 41–5–15(A) should not be applied and his complaint should not have been dismissed.

(2) Plaintiff contends the misinformation supplied by the Department of Insurance should excuse his noncompliance with Sec-

tion 41–5–15(A). In the trial court plaintiff argued estoppel, but omits this argument on appeal, presumably because there is nothing indicating the two defendants were in any way responsible for the misinformation. *See Bowlin's, Inc. v. Ramsey Oil Co., Inc.,* 99 N.M. 660, 662 P.2d 661 (Ct. App.1983); *McDonald v. Kerr-McGee Corp.,* 93 N.M. 192, 598 P.2d 654 (Ct.App. 1979). New Mexico recognizes an excuse for violation of a statute or ordinance in circumstances where the violation would be negligence per se. *See Hayes v. Hagemeier,* 75 N.M. 70, 400 P.2d 945 (1963); *Jackson v. Southwestern Public Service Co.,* 66 N.M. 458, 349 P.2d 1029 (1960); NMSA 1978, UJI Civ. 15.3 (Repl.Pamp.1980). That is not the situation in this case; nor does plaintiff suggest that the above authority applies in this case. Plaintiff argues, without citation of authority, that he had done all he could do to determine that the two defendants were qualified health care providers. We do not so appraise the record.

■ (3) The only showing is that plaintiff sought information from the Department of Insurance. *Johnson v. St. Vincent Hospital, Inc.,* 273 Ind. 374, 404 N.E.2d 585 (1980) suggests, at 595, that the requirements of Section 41–5–15(A) would be subject to the right of a plaintiff to seek discovery, prior to suit, under NMSA 1978, Civ.P. Rule 27 (Repl.Pamp.1980), in order to determine whether a prospective defendant was a qualified health care provider. *See also Linder v. Smith,* 629 P.2d 1187 (Mont.1981). *Jackson v. Southwestern Public Service Co.,* 66 N.M. at 472, 349 P.2d 1029, states the test for excusing violation of a statute where the violation would be negligence per se. See the dissent of Justice Moise in *Hayes v. Hagemeier,* 75 N.M. at 77, 400 P.2d 945. Plaintiff suggests no "excuse" test; his claim, simply, is that his noncompliance with Section 41–5–15(A) is excused because the Department of Insurance supplied incorrect information. The fact that the Department of Insurance supplied misinformation does not establish that the department was the only source of the information sought, or that plaintiff did all that could reasonably be

expected of a person seeking information as to whether a prospective defendant was a qualified health care provider. Assuming, but not deciding, that there could be factual situations excusing noncompliance with Section 41–5–15(A), we hold only that the misinformation from the Department of Insurance, without more, fails to establish such an excuse.

■ (4) Plaintiff's "excuse" argument also fails on the factual basis of the excuse. Plaintiff asserts that he did not know that Layne and the Corporation were qualified health care providers until the time of the panel hearing on his application concerning Zouhar. The commission decision on the claim against Zouhar was filed March 4, 1982. We proceed on the basis of this March 4 date even though the Corporation's motion to dismiss, filed December 31, 1981, put plaintiff on notice that Layne and the Corporation were qualified health care providers. *See Taylor v. Hanchett Oil Co.,* 37 N.M. 606, 27 P.2d 59 (1933); *C.B. & T. Company v. Hefner,* 98 N.M. 594, 651 P.2d 1029 (Ct.App.1982). The commission decision was rendered July 13, 1982. If we were to excuse the delay in the application because plaintiff could not get information about the two defendants, the excuse expired when that information was obtained. Plaintiff's "excuse" argument would be more appropriate if he had filed a new lawsuit after the decision of July 13, 1982, thus complying with Section 41–5–15(A) and argued that his excuse extended the limitation period. He did not do so and any such extension of the limitation period has expired.

■ (e) As a variation of his "excuse" argument, plaintiff contends Section 41–5–15(A) is not to be applied in "iron-clad fashion" if the facts and circumstances show that plaintiff was justified in proceeding as he did. He asserts he "was faced with an imminent statute of limitations problem" and this was a fact or circumstance justifying filing the complaint in district court before an application was filed with the commission. He cites *Jiron v.*

*Mahlab,* 99 N.M. 425, 659 P.2d 311 (1983), in support of the view that facts and circumstances may justify violation of Section 41–5–15(A). *Jiron* dealt with right of access to the courts where a plaintiff was faced with the problem of obtaining personal jurisdiction over a defendant about to leave the country. *Jiron* does not support the view that a plaintiff, who had three years in which to file suit, may disregard Section 41–5–15(A) if the limitation period is about to expire. The fact that the limitation period was about to expire, in itself, shows neither justification, nor excuse, for noncompliance with Section 41–5–15(A). *Compare* 1(d)(2) and (3) above.

■ (f) Plaintiff contends that Section 41–5–15(A) is not to be applied if his complaint names both qualified and nonqualified health care providers as defendants. This argument is not dependent on the misinformation supplied by the Department of Insurance concerning Layne and the Corporation; a hospital was also named as a defendant and it was not a qualified health care provider. Because of the imminent expiration of the limitation period, plaintiff asserts it was necessary to file suit against all defendants to avoid an unreasonable situation. The "unreasonableness" is depicted by plaintiff as requiring the filing of suit against the nonqualified health care provider at the time he did to meet the limitation problem, and awaiting a commission decision before filing suit against qualified health care providers. Plaintiff considers two lawsuits to be unreasonable because problems might (they are not demonstrated) arise as to joinder of parties under NMSA 1978, Civ.P. Rule 19 (Repl.Pamp.1980), and as to cross-claims and third-party practice under NMSA 1978, Civ.P. Rules 13 and 14 (Repl.Pamp.1980). To the extent plaintiff is concerned with trying two lawsuits, we refer him to NMSA 1978, Civ.P. Rule 42(a) (Repl.Pamp.1980). To the extent plaintiff is concerned with joinder of parties and claims, he seeks an advisory opinion because no joinder problem is presented in this appeal. We do not give advisory opinions. *Bell Telephone*

*Laboratories, Inc. v. Bureau of Revenue,* 78 N.M. 78, 428 P.2d 617 (1966).

Section 41–5–15(A) applied to plaintiff's claim against each of the three defendants involved in this appeal. The complaint was subject to dismissal for noncompliance with Section 41–5–15(A). The remainder of this opinion discusses constitutional provisions claimed to bar enforcement of the statute.

**2. Constitutional Claims Not Specifically Involving Section 41–5–15(A)**

Plaintiff seeks to have the entire Medical Malpractice Act declared unconstitutional and, alternatively, to have a sufficient number of specific sections declared unconstitutional so that the remnant of the Act would not function. The purpose is to strike down the entire Act so that Section 41–5–15(A) could not be applied to plaintiff.

(a)(1) Section 41–5–2 states a legislative purpose of promoting "the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico." R. Kovnat, *Medical Malpractice Legislation in New Mexico,* 7 N.M.L.Rev. 5, 7 (1976–77), refers to the "widely-held perception that a medical malpractice crisis existed"; that public concern was triggered by the announced withdrawal of the insurance company underwriting the medical society's professional liability program in which ninety percent of medical practitioners and health care institutions participated. Kovnat, *supra,* at 7–8, nn. 10 and 11. A result of this concern was the Medical Malpractice Act. Kovnat, *supra,* at 6–7, and in n. 6, explains the rationale of the stated purpose of Section 41–5–2. Availability of health care depends on providing incentives to persons to furnish health care services. If the practitioner must bear the cost of the patient's injury, there is a powerful disincentive to furnishing services at all. This disincentive may be met by making professional liability insurance available. Kovnat, *supra,* at 7, n. 6, states that the medical malpractice crisis was precipitated by the allocation of the real cost of medical care which she sug-

gests is "only one facet of a complex social problem."

(2) Plaintiff attacks the correctness of the purpose cited in Section 41–5–2, calling this section as no more than an "ostensible purpose" that "is totally capricious and senseless, and bear[s] no rational relationship toward the accomplishment of the stated purpose."

■ (3) The answer to the "totally capricious and senseless" argument is that the courts of this state do not review the wisdom of legislation. *Village of Deming v. Hosdreg Company, Inc.*, 62 N.M. 18, 33, 35, 303 P.2d 920 (1956) states:

> [T]he public policy of a state is for the legislature whose judgment as to the wisdom, expediency or necessity of any given law is conclusive on the courts unless the declared public policy runs counter to some specific constitutional objection. * * *

* * * * * *

* * * Even though we may question the wisdom of a given enactment, as a matter of policy, that gives us no right to strike it down, if it violates no provision of the fundamental law.

■ (4) The answer to the "rational relationship" argument, which asserts a violation of due process and equal protection, is that there is nothing in the record before us indicating an absence of a rational relationship between the legislative purpose and the accomplishment of that purpose. An exhibit attached to plaintiff's trial brief indicates there are six companies that provide insurance coverage of a type so that an insured health care provider becomes a qualified health care provider. Sections 41–5–5 and 41–5–25. *Compare* the discussion from Kovnat, *supra*. This is the only showing in the appellate record, and this showing indicates a rational relationship between the legislative purpose and the accomplishment of that purpose.

(b)(1) Plaintiff asserts that various provisions of the Medical Malpractice Act are unconstitutional. He attacks Section 41–5–4 concerning the absence of a monetary amount in the ad damnum clause of a complaint; Section 41–5–6, concerning limitation on the amount of recovery; Sections 41–5–7 and 41–5–25, concerning possible inability to collect future medical benefits; Section 41–5–10, concerning future physical examinations; and Sections 41–5–17, 41–5–19 and 41–5–20, concerning the selection of a commission hearing panel, the procedures before the panel and the deliberations and decision of a panel.

(2) None of the sections attacked have been applied adversely to plaintiff. The suit never got that far; this suit involves the failure of plaintiff to comply with Section 41–5–15(A), and the running of the three-year limitation period. There have been panel decisions and those decisions were favorable to plaintiff. On what basis are the sections identified in 2(b)(1), above, before us for review?

(3) Plaintiff claims the sections identified in 2(b)(1), above, are invalid on their *face*. This argument is based on a misunderstanding of when a litigant may make a claim of facial invalidity. We have considered facial challenges to statutes when the statute challenged was to be applied to the person making the challenge. *See State v. Brecheisen*, 101 N.M. 38, 677 P.2d 1074 (Ct.App.1984); *State v. Gurule*, 90 N.M. 87, 559 P.2d 1214 (Ct.App.1977). Where, however, the challenged statute was not to be applied to the challenger, we have refused to consider the constitutional claim. *See State v. Villalpando*, 86 N.M. 193, 521 P.2d 1034 (Ct.App.1974).

■ This refusal is in accordance with the often expressed rule that the appellate courts do not decide abstract constitutional questions, and the "constitutionality of a legislative act is open to attack only by a person whose rights are affected thereby." *State v. Hines*, 78 N.M. 471, 474, 432 P.2d 827 (1967). *See Terry v. New Mexico State Highway Commission*, 98 N.M. 119, 645 P.2d 1375 (1982). For other New Mexico cases to the same effect, see *New Mexico Digest*, Constitutional Law, Key 42, and the various subdivisions thereunder. In following this rule, we have not overlooked

permissible facial, or overbreadth, attacks on statutes involving the First Amendment to the Constitution of the United States. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Basiardanes v. City of Galveston,* 682 F.2d 1203 (5th Cir.1982); *State ex rel. Gonzales v. Manzagol,* 87 N.M. 230, 531 P.2d 1203 (1975). First amendment rights are not involved in these appeals.

 The applicable principle in these appeals is that "courts are not roving commissions assigned to pass judgment on the validity of * * * [New Mexico's] laws * * *. Constitutional judgments * * * are justified only out of the necessity of adjudicating rights in particular cases * * *." *Broadrick v. Oklahoma,* 413 U.S. at 610, 93 S.Ct. at 2914. This principle applies to cases under the Medical Malpractice Act. *Everett v. Goldman,* 359 So.2d 1256 (La. 1978).

### 3. Constitutional Claims Involving Section 41–5–15(A)

In discussing the constitutional attacks on Section 41–5–15(A), the parties rely primarily on decisions involving Medical Malpractice Acts of other jurisdictions. Plaintiff recognizes, however, that "no particular case from any other jurisdiction is determinative of whether or not the ... panel requirement can withstand constitutional challenge. The respective cases are merely illustrative of the arguments and the issues involved." We agree. Although there are numerous cases from other jurisdictions on these issues, we cite non-New Mexico authority only sparingly because New Mexico law controls, and our decisions provide the basis for adjudicating the constitutional claims. For cases that consider several of the constitutional claims in a medical malpractice context, see *Johnson v. St. Vincent Hospital, Inc.; Everett v. Goldman; Linder v. Smith.*

### (a) Right of access to the courts.

 *Jiron v. Mahlab* indicates that denial of a right of access to the courts could be characterized as involving a denial of the right to due process. Plaintiff does not rely on a particular constitutional provision in claiming the deprival of a right of access, he relies on *Jiron v. Mahlab.* His argument is that if the facts and circumstances deprive plaintiff of access, then *Jiron v. Mahlab* holds that Section 41–5–15(A) unconstitutionally denies the right of access. The facts and circumstances, according to plaintiff, were the imminent running of the limitation period and the fact of multiple defendants. The defendants included both qualified and nonqualified health care providers. He equates these two items to the controlling fact in *Jiron* —obtaining personal jurisdiction before the defendant left the country. The controlling fact in *Jiron* is not comparable to limitation problems and multiple defendant problems which are problems common to various types of litigation and not peculiar to Section 41–5–15(A).

*Jiron* states:

Because the Medical Malpractice Act requires speed and no undue delay, it does not violate a plaintiff's right of access to the courts without undue delay in most circumstances. But where the requirement of first going before the Medical Review Commission causes undue delay prejudicing a plaintiff by the loss of witnesses or parties, the plaintiff is unconstitutionally deprived of his right of access to the courts.

99 N.M. at 427, 659 P.2d 311.

Plaintiff does not claim a loss of witnesses or parties by the operation of Section 41–5–15(A). The limitation problem and any potential problem because some defendants were qualified and some were not qualified health care providers arises from plaintiff's delay rather than delay from compliance with Section 41–5–15(A). *Jiron v. Mahlab* does not require us to hold that plaintiff was denied access to the courts and the facts and circumstances, upon which plaintiff relies, do not show that Section 41–5–15(A) denies plaintiff access to the courts.

**(b) Diminution of original jurisdiction of the district court (N.M. Const. art. VI, § 13).**

For the reasons stated in our access discussion, 3(a) above, Section 41–5–15(A) does not diminish the original jurisdiction of the district court.

**(c) Right to jury trial (N.M. Const. art II, § 12).**

The right to a jury trial does not exist in a vacuum; this right does not come into play unless there is a lawsuit. NMSA 1978, Civ.P. Rule 38 (Cum.Supp. 1983) regulates the right to a jury trial in civil actions. Section 41–5–15(A) states a condition for filing a malpractice action; the statute does not regulate jury trials. Section 41–5–15(A) does not interfere with the jury trial process; the requirement of pre-suit commission review involves access to the courts rather than the right to a jury trial. *See Linder v. Smith.*

**(d) Separation of powers (N.M. Const. art. III, § 1).**

This constitutional provision states that governmental power is divided into executive, legislative and judicial departments. Plaintiff claims Section 41–5–15(A) is a legislative violation of power belonging to the judicial department. He claims a violation in two ways.

(1) Plaintiff asserts the review required by Section 41–5–15(A) is performed by a panel which exercises judicial power. He points out that a review panel must determine whether material is "relevant," decide whether there is "substantial evidence" of malpractice and decide "whether there is a reasonable medical probability that the patient was injured * * *." Section 41–5–20. Plaintiff asserts these functions "are essentially judicial in nature * * *." Courts perform these functions. However, it does not follow from this that the exercise of these functions by other than a court encroaches upon the judicial power. *See Fellows v. Shultz,* 81 N.M. 496, 469 P.2d 141 (1970).

*State v. Kelly,* 27 N.M. 412, 428, 202 P. 524 (1921) states: "The rights and liabilities of a private individual are fixed by law and are to be determined by judicial inquiry or investigation * * *." *Fellows v. Shultz,* 81 N.M. at 498, 469 P.2d 141, points out that the legislative power does "not extend to determinations of rights and liabilities between individuals." *Kelley v. Marron,* 21 N.M. 239, 243, 153 P. 262 (1915) states: "The judicial department is created and endowed with the power to construe and interpret the laws and administer justice, between state and citizen, citizen and citizen, or citizen and stranger."

Section 41–5–20(F) states: "The panel's decisions shall be without administrative or judicial authority and shall not be binding on any party." The essence of judicial power is the final authority to render and enforce a judgment. *DiAntonio v. Northampton-Accomack Memorial Hospital,* 628 F.2d 287 (4th Cir.1980). The panel does not exercise judicial power; the requirement of panel review is not a legislative violation of powers belonging to the judicial department.

(2) Plaintiff contends Section 41–5–15(A) deals with procedure in judicial proceedings, and asserts that the Legislature lacks authority to regulate judicial procedure. *See Ammerman v. Hubbard Broadcasting, Inc.,* 89 N.M. 307, 551 P.2d 1354 (1976).

We assume that Section 41–5–15(A) deals with procedure. Legislation dealing with procedure in judicial proceedings is not automatically in violation of N.M. Const. art. III, § 1. Where the legislation conflicts with procedure adopted by the Supreme Court, the legislation violates the constitutional provisions for separation of powers. *Ammerman.* However, the legislation is to be given effect until a conflict exists. *State v. Herrera,* 92 N.M. 7, 582 P.2d 384 (Ct.App.1978). Plaintiff's attempt to demonstrate a conflict goes only to provisions of the Medical Malpractice Act which, at this point, have not been applied adversely to plaintiff. *See* 2 above. Plaintiff does not attempt to show that

Section 41–5–15(A) conflicts with any procedural rule adopted by the Supreme Court.

**(e) Special legislation (N.M. Cost. art. IV, § 24) and equal protection (N.M. Const. art. II, § 18).**

Both of these claims are based on classifications, thus we discuss them together.

■ (1) Plaintiff attacks the limitation period applicable to malpractice suits. This involves both special legislation and equal protection. *Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (Ct.App.1977), refined in *Terry v. New Mexico State Highway Commission.* Plaintiff points out that the limitation period for medical malpractice claims differs from the limitation period for other torts and may differ from claims for other types of malpractice. For the purpose of answering this contention, we accept plaintiff's contention that the limitation period for medical malpractice is a special classification. Such does not establish a constitutional violation; it does no more than provide the basis for the question to be answered. The question is whether the classification has a rational basis. *Terry v. New Mexico State Highway Commission; Howell v. Burk.* This limitations claim was answered adverse to plaintiff in *Armijo v. Tandysh,* 98 N.M. 181, 646 P.2d 1245 (Ct.App.1981).

(2) Plaintiff asserts the Medical Malpractice Act irrationally distinguishes between plaintiffs seeking damages for medical malpractice and plaintiffs seeking damages on the basis of other torts. His argument follows generally the discussion in Kovnat, *supra,* at 25–28. His argument as to classification of plaintiffs does not involve Section 41–5–15(A) and is not before us for review. *See* 2 and 3(d)(2) above.

■ (3) Plaintiff claims that Section 41–5–15(A) improperly distinguishes between types of tort-feasors; that there is no rational distinction between health care provider tort-feasors and other types of tort-feasors. This is not the distinction made in the statute. Section 41–5–15(A) applies only to qualified health care providers. The equal protection concern is whether there is a rational basis for requiring commission review of malpractice claims only against qualified health care providers. Plaintiff's arguments on this constitutional claim are the same arguments addressed in connection with Section 41–5–2, and our answers are the same. *See* 2(a) above. We cannot say, on this record, that Section 41–5–15(A) is devoid of reason, capricious or lacks any redeeming values. *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977).

**(f) Due process (N.M. Const. art. II, § 18).**

■ (1) Plaintiff asserts Section 41–5–15(A) violates due process because "[n]o bona fide purpose is served by requiring proceedings through the Review Panel * * *." He asserts that the statute is irrational, unreasonable and an improper use of the police power. However plaintiff labels this due process claim, its essence is a claim of substantive due process involving a proper legislative purpose and the relation of the statute to that purpose. *See Alber v. Nolle,* 98 N.M. 100, 645 P.2d 456 (Ct.App.1982); *Casillas v. S.W.I.G.,* 96 N.M. 84, 628 P.2d 329 (Ct.App.1981); *State v. Dennis,* 80 N.M. 262, 454 P.2d 276 (Ct. App.1969). We discussed, in 2(a) above, the legislative purpose and whether the Medical Malpractice Act accorded with that purpose. Here we are concerned only with Section 41–5–15(A), not with the entire Act. There is nothing indicating Section 41–5–15(A) is not in accord with the declared purpose of Section 41–5–2, and plaintiff does not attempt to demonstrate that Section 41–5–15(A), in itself, lacks such accord. Kovnat, *supra,* Appendix III, at 42, shows that the voluntary review of malpractice claims prior to enactment of the Medical Malpractice Act reduced the filing of nonmeritorious claims and encouraged the settlement of other claims. *See also* Kovnat, *supra,* at 31. This indicates that the required review of claims against qualified health care providers accords with the legislative purpose and that Section 41–5–

15(A) does not violate substantive due process.

■■■ (2) Plaintiff asserts he has received no quid pro quo for the requirement of a commission review. As an individual, he is not entitled to one. "A statute enacted in the proper exercise of the police power, even though it may limit or destroy private property, is not a deprivation of property without due process of law." *Alber v. Nolle*, 98 N.M. at 105, 645 P.2d 456. Compare a similar quid pro quo argument involving equal protection in *Gallegos v. Homestake Mining Co.*, 97 N.M. 717, 643 P.2d 281 (Ct.App.1982). The due process question in this case involves a proper legislative purpose and whether the enacted statute accords with that purpose; not whether plaintiff, as an individual, gained or lost under the statute. *See State ex rel. State Highway Commission v. Town of Grants*, 66 N.M. 355, 348 P.2d 274 (1960). We pointed out in 3(f)(1), above, that there is no showing of an improper purpose or that Section 41–5–15(A) fails to accord with the stated legislative purpose.

(3) Plaintiff suggests that Section 41–5–15(A) changes and regulates the manner in which medical malpractice claims may be pursued, and that such change and regulation violates due process. This was answered adverse to plaintiff in *Howell v. Burk*.

**(g) Miscellaneous (N.M. Const. art. II, §§ 4 and 23).**

■■■ Plaintiff asserts Section 41–5–15(A) violates the inherent and inalienable rights to acquire property recognized by N.M. Const. art. II, § 4, or alternatively, impairs the rights retained by the people as stated in N.M. Const. art. II, § 23. These rights are not absolute, but subject to reasonable regulation. *Cf. Futrell v. Ahrens*, 88 N.M. 284, 540 P.2d 214 (1975).

Plaintiff has not demonstrated that Section 41–5–15(A), which has been applied to him, is unconstitutional either on its face or as applied. The order dismissing plaintiff's complaint against Layne and Albuquerque Anesthesia Services, Ltd. is affirmed. The order denying Zouhar's motion to dismiss is reversed. The cause is remanded with instructions to dismiss plaintiff's complaint against Zouhar.

Plaintiff shall bear his appellate costs. Zouhar shall recover his appellate costs from plaintiff.

IT IS SO ORDERED.

HENDLEY and ALARID, JJ., concur.