WALIGA ET AL., APPELLEES, *v.* BOARD OF TRUSTEES OF KENT STATE UNIVERSITY ET AL., APPELLANTS.

[Cite as Waliga *v.* Bd. of Trustees of Kent State Univ. (1986), 22 Ohio St. 3d 55.]

(No. 85-133—Decided February 5, 1986.)

*Donald H. Martell* and *Stephen Colecchi,* for appellees.

*Anthony J. Celebrezze, Jr.,* attorney general, *John R. Climaco, Dennis R. Wilcox* and *O. J. Schneider,* for appellants.

*Covington & Burling, Eugene D. Gulland, J. Peter Byrne* and *Sheldon E. Steinbach,* urging reversal for *amicus curiae,* American Council on Education.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Edward J. Elum,* urging reversal for *amicus curiae,* State Universities of Ohio.

WISE, J. The sole issue raised by this case is whether the university has the authority and power to revoke improperly awarded degrees. The procedural issues before the trial court were not addressed, and hence are not before this court.[1]

Kent State University, by virtue of R.C. Chapter 3341, and specifically R.C. 3341.05, "may confer such * * * academic degrees as are customarily conferred by colleges and universities in the United States." R.C. 3341.04

---

[1] Except for the issue of their right to appear with counsel at the hearing before the CAC, appellees never challenged the procedure established by the university whereby appellees were: (1) advised in writing of the university's intent to commence degree revocation proceedings; (2) given opportunity to review documents the university intended to introduce at the hearing before the CAC; (3) given advance notice of the hearing before the CAC; and (4) given an opportunity to confront the witnesses and present their own evidence at the hearing.

provides, in part, that the universities "shall do all things necessary for the proper maintenance and successful and continuous operation of such universities."

We consider it self-evident that a college or university acting through its board of trustees does have the inherent authority to revoke an improperly awarded degree where (1) good cause such as fraud, deceit, or error is shown, and (2) the degree-holder is afforded a fair hearing at which he can present evidence and protect his interest. Academic degrees are a university's certification to the world at large of the recipient's educational achievement and fulfillment of the institution's standards. To hold that a university may never withdraw a degree, effectively requires the university to continue making a false certification to the public at large of the accomplishment of persons who in fact lack the very qualifications that are certified. Such a holding would undermine public confidence in the integrity of degrees, call academic standards into question, and harm those who rely on the certification which the degree represents.

Any action which is necessary for the proper maintenance and successful operation of a state university is authorized, unless it is prohibited by statute. *State, ex rel. Sigall,* v. *Aetna Cleaning Contractors* (1976), 45 Ohio St. 2d 308 [74 O.O.2d 471]. In the event that a degree is procured through fraud, or a degree is awarded erroneously, it is certainly within the implied authority of the university to revoke it. A power of a state agency may be fairly implied from an express power where it is reasonably related to the duties of the agency. *State, ex rel. Corrigan,* v. *Seminatore* (1981), 66 Ohio St. 2d 459 [20 O.O.3d 388]. The power to confer degrees necessarily implies the power to revoke degrees erroneously granted.

More than two hundred fifty years ago, these same issues were addressed in *The King* v. *University of Cambridge (Bentley's Case)* (K.B. 1723), 8 Modern Rep. (Select Cases) 148, 92 E.R. 818, 2 Ld. Raym. 1334, a degree-holder's mandamus action to compel restoration of a degree that the university had revoked. Chief Justice Pratt of the Court of King's Bench stated:

"This is a case of great consequence, both as to the property, the honour, and the learning, of this university, and concerns every graduate there, though at present it is the case only of one learned man, and the head of a college. *The question is, Whether the University can suspend and degrade, and by what rules they may proceed in either or both of these cases?"* (Emphasis added.) 8 Modern Rep. at 161.

He went on to say that the University of Cambridge could revoke a degree for "a reasonable cause * * * specially set forth, *(id.),"* but "that a man shall not be deprived of his property without being heard, *(id.* at 161-162)"; therefore, the degree-holder must be afforded the right to attend and participate in the proceedings before the vice-chancellor's court. The English common law provides precedential rules of decision in Ohio

and other states.[2] Modern courts have also traditionally refused to interfere with fundamental university functions, such as the granting and withdrawing of academic degrees, except to require that good cause be shown and that a fair hearing procedure be made available. *Goss* v. *Lopez* (1975), 419 U.S. 565; *Mahavongsanan* v. *Hall* (C.A. 5, 1976), 529 F.2d 448; *Bd. of Curators* v. *Horowitz* (1978), 435 U.S. 78; *Olsson* v. *Bd. of Higher Edn.* (1980), 49 N.Y.2d 408, 426 N.Y. Supp. 2d 248, 402 N.E.2d 1150.

A degree-holder possesses a property right in and to his degree and that substantial right cannot be taken away "except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Edn.* v. *Loudermill* (1985), __ U.S. __, 84 L. Ed. 2d 494, 503.

We hold that the university board of trustees does have the authority to revoke previously granted academic degrees for proper cause after affording the degree-holder constitutionally adequate procedures.

Based on the foregoing, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

WISE, J., of the Fifth Appellate District, sitting for LOCHER, J.

---

[2] See *Thomas* v. *United States* (C.A. 6, 1951), 189 F.2d 494, 501, certiorari denied (1951), 342 U.S. 850 ("In determining what the common law is, decisions of the English courts are looked to, and if rendered before the Revolution, are usually considered conclusive evidence of what it is.").