Michael HAND, Plaintiff–Appellee,

v.

William H. MATCHETT; Michael Zimmerman; William B. Conroy; James E. Halligan; New Mexico State University, Defendants–Appellants.

No. 91–2067.

United States Court of Appeals, Tenth Circuit.

Feb. 25, 1992.

---

Howell Cobb, III of Richard, Lee, Rowley, Cobb & Hall, P.C., El Paso, Tex., for plaintiff-appellee.

B. James Reeves of Reeves, Chavez, Greenfield, Acosta & Walker, P.A., Las Cruces, N.M., for defendants-appellants.

Before LOGAN and BARRETT, Circuit Judges, and KELLY,* District Judge.

BARRETT, Senior Circuit Judge.

Defendants-appellants, who are faculty members and officials of New Mexico State University (NMSU), appeal from a summary judgment entered in favor of Plaintiff-appellee Michael Hand. The primary issue on appeal concerns whether NMSU's revocation of Hand's Ph.D. was valid under New Mexico statute. The revocation followed an investigation which revealed that certain portions of his dissertation contained plagiarized material. Because we agree with the district court that Defendants acted outside New Mexico law when they revoked the degree, we affirm.[1]

### Facts

NMSU is designated as a state land grant institution of higher learning in the New Mexico constitution. *See* N.M. Const. art. XII, § 11. Provisions relating to the governance of the university are found in state statutes. *See generally* N.M.Stat. Ann. §§ 21–8–1 to 21–8–28. A five-member

Board of Regents is responsible for enacting all rules and regulations necessary to the operation of the university. *See id.* § 21–8–5. These Regents are given the express power to "enact laws for the government of [NMSU] ." *Id.* § 21–8–6. Further, they are vested with exclusive authority to confer degrees and diplomas. *See id.* § 21–8–7.

Michael Hand was a student in NMSU's graduate school from 1979 through 1982. In 1982, he was awarded a Ph.D. in counseling psychology. Since that time, he has practiced as a licensed psychologist in El Paso, Texas. He has neither attended nor enrolled in the university since he obtained his degree.

In the fall of 1987, an anonymous individual forwarded a copy of Hand's dissertation to university officials. Accompanying it were excerpts from two sources cited in the literature review section. The dissertation and the sources were highlighted to reveal alleged plagiarism. These materials were turned over to William H. Matchett, Dean of the graduate school. Following a preliminary inquiry into the matter, Matchett determined further investigation was warranted.

Matchett consulted with various faculty members. In particular, he submitted the material to the head of the Counseling and Educational Psychology department. That individual then consulted faculty in the department. They unanimously agreed that the dissertation contained plagiarized material. On January 7, 1988, Matchett and members of the counseling psychology department met with William Conroy, the Executive Vice–President of NMSU. The goal of the meeting was to discuss the investigation and decide on a course of action to follow.

During this meeting, these individuals determined that Matchett, along with Associate Dean Steadman Upham, would be charged with developing degree revocation

---

\* Honorable Patrick F. Kelly, District Judge, United States District Court for the District of Kansas, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously

that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

procedures. Sometime after the meeting, they drafted the following proposal, which was designed to handle cases of academic misconduct in the graduate school:

1. Allegations regarding academic misconduct shall be brought immediately to the attention of the Graduate Dean.

2. The Graduate Dean shall conduct a preliminary investigation with the appropriate professional bodies within the university.

3. Should serious academic misconduct be suspected, the Graduate Dean shall notify the Executive Vice President.

4. The Graduate Dean may consult outside experts in the professional field in which misconduct is suspected. The purpose of this consultation shall be to provide an evaluation of the alleged misconduct.

5. In all cases where serious misconduct is suspected, the Graduate Dean shall convene a misconduct review panel consisting of the chairperson of the Graduate Council, the chairperson of the Faculty Senate, and an administrative officer of the unit in which the suspected misconduct occurred. This panel shall review the evidence and its evaluation, decide whether a formal charge is appropriate, and advise the Graduate Dean.

6. If so advised, the Graduate Dean shall:

a) appoint an *ad hoc* committee

b) issue a formal charge detailing the basis for the charge

c) invite the accused to respond to the charge in writing and to appear before the *ad hoc* committee to discuss the charge and accumulated evidence

Legal counsel may attend, but shall not participate directly or indirectly in this academic proceeding.

7. Following the hearing and upon receipt of formal, written advice of the *ad hoc* committee, the Graduate Dean shall decide upon the disposition of the case, and if appropriate, the imposition of sanctions.

8. The Graduate Dean shall notify the accused who shall have five working days to decide if s(he) wishes to appeal the decision.

9. The Graduate Dean's decision may be appealed only in writing to the Executive Vice President whose review and decision, with the concurrence of the President, is final. This decision will be rendered within five working days following receipt of the request for appeal.

Appellants' App. at 31–32. Prior to the time this proposal was presented to the Board of Regents, Deans Matchett and Upham submitted the materials supporting the alleged plagiarism to two outside authorities. These experts, both faculty members of recognized universities, sent reports to Dean Matchett. The experts agreed that the dissertation contained plagiarized material.

On March 18, 1988, the Board of Regents unanimously approved the proposed procedures for handling academic misconduct cases in the graduate school. On March 21, Matchett sent Hand a letter outlining the formal charges made against him. This was the first notice of the charges he received from the university. On March 24, Hand responded. In his letter, he admitted there were certain inadequacies in his dissertation but stated they were due to "carelessness, poor judgement [sic] and weakness," rather than any intent to deceive. *See* Appellants' App. at 59–60.

After receiving Hand's response, Matchett formed an *ad hoc* committee of graduate school faculty members to review the matter. On April 6, 1988, Matchett sent Hand a letter informing him that the committee would meet on April 18. Hand was invited to attend to respond to the allegations. At the hearing, Hand appeared with a colleague who spoke on his behalf. He did not bring an attorney, although he knew he had that right under the university's procedures. The hearing was recorded, but due to technical difficulties the first half of the transcript was unintelligible.

The committee determined the dissertation contained plagiarized material. This finding was reported to Matchett. He then determined, on his own, that degree revocation was the appropriate sanction. This

determination was reported to Hand on April 27, 1988. At this juncture, Hand obtained legal counsel, who filed an appeal on his behalf. Following a hearing, which Hand and his attorney attended, the decision to revoke the degree was affirmed. The NMSU registrar was instructed to alter Hand's university transcript accordingly. This action followed.

The district court granted summary judgment in favor of Michael Hand after determining that NMSU's actions violated New Mexico law.[2] Specifically, the court determined that because the Board of Regents is the only university body which may confer degrees, it likewise is the only body which may revoke them. The court ruled that because the Board had no role in revoking Michael Hand's degree, the revocation was void. The court did not reach the procedural and substantive due process claims which Hand raised. Because we agree that NMSU did not act in accordance with New Mexico law in revoking the degree, we affirm the district court.

*Discussion*

The issue which is central to this appeal concerns the power of the university Board of Regents. This court must determine 1) whether the Regents, and thus the university, have the power to revoke degrees, and 2) if so, whether the procedures followed in this case comport with New Mexico law. We review the district court's grant of summary judgment de novo, applying the same standards which the district court applied under Fed.R.Civ.P. 56(c). *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Salve Regina College v. Russell,* — U.S. —, 111 S.Ct. 1217, 1222, 113 L.Ed.2d 190 (1991) (appellate court need not defer to district court ruling on questions involving the interpretation of state law).

Hand contends NMSU did not have the authority to revoke his degree because that

power is not explicitly conferred in the statutes governing the operation of the university. The pertinent statute reads:

> The immediate government of the several departments shall be intrusted to their respective faculties, but the regents shall have the power to regulate the course of instruction and prescribe, under the advice of the faculty, the books and authorities to be used in the several departments, and also to confer such degrees and grant such diplomas as are usually conferred and granted by other agricultural colleges. The regents shall have power to remove any officer connected with the agricultural college [New Mexico state university] or experiment station when, in their judgment, the best interests of the college [university] require it.

N.M.Stat.Ann. § 21–8–7. The plain language of this statute gives the Regents exclusive power to confer degrees. Implicit in that power must be the authority to revoke degrees. *See Crook v. Baker*, 813 F.2d 88, 92 (6th Cir.1987); *Waliga v. Board of Trustees*, 22 Ohio St.3d 55, 488 N.E.2d 850, 852 (1986); *see also Futrell v. Ahrens*, 88 N.M. 284, 540 P.2d 214, 217 (1975) (Board of Regents retains power to "control, manage and govern" the university).

We consider it self-evident that a college or university acting through its board of trustees does have the inherent authority to revoke an improperly awarded degree where (1) good cause such as fraud, deceit, or error is shown, and (2) the degree-holder is afforded a fair hearing at which he can present evidence and protect his interest. Academic degrees are a university's certification to the world at large of the recipient's educational achievement and fulfillment of the institution's standards. To hold that a university may never withdraw a degree, effectively requires the university to continue making a false certification to the

---

**2.** The district court granted summary judgment in favor of Hand, sua sponte, after the Defendants filed a motion for summary judgment. The record indicates that the Defendants had adequate opportunity to address all pertinent issues in the case prior to the court's decision. Therefore, the district court's action in granting

summary judgment was appropriate. *Graham v. City of Oklahoma City*, 859 F.2d 142, 144 (10th Cir.1988). In addition, because the facts which the district court recited are essentially undisputed, we need not address Defendants' concern that the court viewed the evidence in a light more favorable to Hand.

public at large of the accomplishment of persons who in fact lack the very qualifications that are certified. Such a holding would undermine public confidence in the integrity of degrees, call academic standards into question, and harm those who rely on the certification which the degree represents.

*Waliga,* 488 N.E.2d at 852. The ability to revoke degrees obtained through fraudulent means is a necessary corollary to the Regents' power to confer those degrees. Thus, the university is not statutorily barred from withdrawing Michael Hand's Ph.D. The question in this case is whether the revocation was done in accordance with New Mexico statute.

The Board of Regents approved the procedures which Dean Matchett followed to revoke Hand's degree. The Board did not, however, have any involvement in the revocation proceedings. It was not consulted about the sanction, nor was there any mechanism incorporated into the adopted procedures which required the Board to oversee the process. Michael Hand was not provided a hearing before the Board prior to the revocation. *See Crook,* 813 F.2d at 90 ("[T]he Regents, having approved the finding of fraud and having accepted the recommendation, rescinded the degree.").

The Defendants do not dispute these facts. Instead, they argue that in approving the procedures which Matchett developed, the Board of Regents affected a valid delegation of its purported power to revoke the degree. The argument follows that because the delegation was valid, the revocation was valid. While this argument is facially appealing, it cannot withstand judicial scrutiny when reviewed in conjunction with New Mexico's statutory scheme.

The statute at issue gives the Board of Regents exclusive power to confer degrees. Conversely, it is appropriate to assume that to the extent a power to revoke degrees is recognized, it too is vested exclusively in the Regents. None of the statutes governing the university expressly allow the Regents to delegate this, or any other, power. Defendants contend, however, that the power to delegate can be gleaned from the statutory reference in § 21–8–7 leaving the "immediate government" of the various departments to their respective faculties. They do not cite any authority for this proposition. Instead, they assert this interpretation comports with the legislative intent of the statute. *See Gambrel v. Marriott Hotel,* 112 N.M. 668, 818 P.2d 869, 871 (Ct.App.1991) (identifying proper construction of statutory provision requires determining legislative intent).

We disagree. When confronted with the question whether the Regents may delegate final authority to subordinate groups within the university, the New Mexico Attorney General stated,

The duties of the Board of Regents may be "delegated" only in a manner which reserves to the Regents final administrative authority in the conduct of University affairs, and which insures that the Board will in fact exercise this authority. An attempt to vest final authority in subordinate bodies within the University is improper, and policies which either explicitly or by operation deprive the Board of ultimate supervisory powers over University administration are in conflict with the statutes and constitution of this state.

69 Op.Att'y 104 (1969). Although not bound by the Attorney General's opinion, we may give it such weight as we deem appropriate. *See City of Santa Rosa v. Jaramillo,* 85 N.M. 747, 517 P.2d 69, 72 (1973). "The long interpretation of a statute by the executive authority charged with its administration is not binding upon a court, but it is persuasive and will not be lightly overturned if the act is of doubtful meaning." *Owens v. Swope,* 60 N.M. 71, 287 P.2d 605, 614 (1955) (quoting *City of Roswell v. Mountain States Tel. & Tel. Co.,* 78 F.2d 379, 382 (10th Cir.1935)), *cert. denied,* 350 U.S. 954, 76 S.Ct. 343, 100 L.Ed. 830 (1956).

The evidence is undisputed that with the exception of approving Dean Matchett's procedures for degree revocation, the Board of Regents had no involvement in the process. They delegated final authority to revoke the degree to a subordinate body in violation of New Mexico law. In

**796**

order to come within the statute, it is necessary that the Board of Regents retain some involvement in the revocation process. They must exercise final authority. Because the Board of Regents did not exercise final authority in the decision to revoke Michael Hand's degree, the revocation is void. As a result, we must hold that the Defendants acted outside New Mexico law when they revoked Michael Hand's degree.

Consequently, the judgment of the United States District Court for the District of New Mexico is AFFIRMED.