**STATE ex rel. LAKELAND ANESTHESIA GROUP, INC., Appellant,**

**v.**

**OHIO STATE MEDICAL BOARD et al., Appellees.**

[Cite as *State ex rel. Lakeland Anesthesia Group, Inc.
v. Ohio State Med. Bd.* (1991), 74 Ohio App.3d 643.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58710.

Decided June 24, 1991.

*Armstrong, Gordon, Mitchell & Damiani, Louis C. Damiani* and *Elliott S. Barrat,* for appellant.

*Lee Fisher,* Attorney General, and *Rachel Belenker,* Assistant Attorney General, for appellees.

NAHRA, Presiding Judge.

Lakeland Anesthesia Group, Inc. ("Lakeland"), relator-appellant, appeals the trial court's denial of a writ of mandamus that Lakeland had sought against respondents-appellees, the Ohio State Medical Board ("Medical Board"), its Executive Director Ray Q. Bumgarner, and twelve of its members.

In 1986, a dispute arose between Lakeland and Community Mutual Insurance Company ("CMIC"), a private insurance company, concerning the propriety of paying medical claims submitted by Lakeland to CMIC for the in-office administration of anesthetics and related services performed under the direction of, and immediate presence of, a licensed podiatrist. Lakeland is an Ohio professional corporation whose employees are duly licensed, certified registered nurse anesthetists ("CRNAs") in Ohio.

On December 5, 1986, an employee of CMIC wrote a letter to the Medical Board seeking a statement of clarification regarding anesthetics administration by a CRNA. In particular, CMIC asked:

1. "Is a podiatrist supervising the in-office administration of anesthe[tics] by a CRNA within the DPM's scope of practice?"

2. "Is a CRNA administering anesthe[tics] in-office, under the direct supervision of a podiatrist, practicing within the CRNA's scope of practice?"

Before responding to CMIC's letter, the Medical Board received a letter from Elliot S. Barrat, an attorney representing Lakeland. Dated February 16, 1987, the letter by Barrat quoted or paraphrased various sections of the Revised Code and stated that such sections did not restrict the application of medical services by Lakeland Anesthesia Group. The letter did not request a response from the Medical Board.

On March 17, 1987, respondent Bumgarner responded to CMIC's December 5, 1986 letter and stated in part:

"[Y]our questions pertain to 'in-office' use of anesthe[tics]. Section 4731.51, Revised Code, provides within the definition of the practice of podiatry that general anesthetics may be used under that provision only in colleges of podiatry approved by the Board, or in JCAH or ADA accredited hospitals. Consequently, if you are inquiring about 'in-office' use of general anesthe[tics], a podiatrist does not have authority to either direct its administration by a CRNA, or to assume the role of the physician whose presence is required by Section 4731.35, Revised Code. To interpret otherwise, would allow a podiatrist to perform duties or assume responsibilities prohibited by statute merely by utilizing a CRNA."

On May 21, 1987, attorney Barrat wrote a second letter to the Medical Board on behalf of Lakeland in which he indicated that he had received a copy of Bumgarner's March 17, 1987 letter. Barrat did not request a response to his letter and attempted to distinguish between general anesthetics and the administration of drugs.

On February 11, 1988, attorney Louis C. Damiani wrote a letter on behalf of Lakeland to the Medical Board in which Damiani requested a retraction of Bumgarner's March 17, 1987 letter. On February 23, 1988, Bumgarner wrote to Lakeland in which he refused to retract the letter and offered to meet with Lakeland. After such meeting, the issue was presented to the full membership of the Ohio State Medical Board. On August 11, 1988, respondent Harry G. Cramblett, M.D., a member and Secretary of the Medical Board, wrote a letter to Damiani, affirming the interpretation in Bumgarner's letter of March 17, 1987.

On October 4, 1988, Lakeland filed a complaint in mandamus against the Medical Board, its Executive Director, and its twelve members. Lakeland sought to have the letters from Bumgarner and Dr. Cramblett vacated because the Medical Board had abused its discretion in issuing such "opinion" letters. The parties agreed to submit the matter to the trial court on factual stipulations and briefs. The stipulations included correspondence between the parties and the deposition of Ray Q. Bumgarner.[1] On October 4, 1989, the trial court issued its order denying the requested writ of mandamus. The trial court found that Lakeland had failed to establish a clear legal right to have the letters vacated and also failed to establish that the Medical Board had a clear legal duty to vacate them. The trial court also denied the writ of mandamus because Lakeland had an adequate remedy at law through its pending suit against the Medical Board in the Court of Claims. This timely appeal follows.

## I

Appellant's first assignment of error states:

"The lower court erred in holding that the State of Ohio Medical Board has inherent authority to issue opinion letters for the purpose of defining the rights of private parties not under its jurisdiction."

Lakeland contends that the trial court erred when it denied Lakeland's writ of mandamus to vacate the letters written by the Medical Board on the subject of the use of general anesthetics by certified registered nurse anesthetists working under the direction of podiatrists. Lakeland asserts that the Medical Board had no authority to render a legal and/or advisory opinion based on the inquiry from CMIC. It also contends that the Medical Board lacked jurisdiction to determine the rights of a private insurance company and the CRNAs insofar as the Medical Board does not regulate either one.

■ Mandamus is an extraordinary writ that should be granted with care. In order for a writ to issue, a relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondent is under a clear legal duty to perform the requested act, and (3) that there is the absence of a plain and adequate remedy in the ordinary course of law. *State ex rel. Liberty Mills, Inc. v. Locker* (1986), 22 Ohio St.3d 102, 103, 22 OBR 136, 137, 488 N.E.2d 883, 885, citing with approval *State ex rel. Cody v. Toner* (1983), 8 Ohio St.3d 22, 8

---

1. On March 15, 1989, Lakeland filed a complaint in the Court of Claims against the Medical Board seeking $500,000 for the tortious interference with a business relationship and "such other relief as this court deems just and equitable."

OBR 255, 456 N.E.2d 813, certiorari denied (1984), 466 U.S. 938, 104 S.Ct. 1912, 80 L.Ed.2d 461.

In the instant case, relator Lakeland has not demonstrated compliance with the requirements that would warrant the issuance of a writ of mandamus.

The letters in question addressed the issue of the authority of a certified registered nurse anesthetist to work "in-office" with a podiatrist. R.C. 4731.35, which permits registered nurses to administer anesthetics, provides:

"Sections 4731.01 to 4731.47, inclusive, of the Revised Code shall not apply to or prohibit in any way the administration of an anaesthetic by a registered nurse under the direction of and in the immediate presence of a licensed physician, provided such nurse has taken a prescribed course in anaesthesia, at a hospital in good standing."

The term "physician" is not defined expressly for purposes determining whether a podiatrist is one under whose direction a registered nurse may administer anaesthetics. R.C. 4731.56 states in pertinent part:

"*A certificate authorizing the practice of podiatry permits the holder the use of the title 'physician' or the use of the title 'surgeon' when the title is qualified by letters or words showing that the holder of the certificate is a practitioner of podiatry.* Such certificate shall be prominently displayed in the certificate holder's office or the place where a major portion of such certificate holder's practice is conducted." (Emphasis added.)

R.C. 4731.51 sets forth the scope of practice of podiatrists. It provides:

"The practice of podiatry consists of the medical, mechanical, and surgical treatment of ailments of the foot, the muscles and tendons of the leg governing the functions of the foot; and superficial lesions of the hand other than those associated with trauma. Podiatrists are permitted the use of such preparations, medicines, and drugs as may be necessary for the treatment of such ailments. The podiatrist may treat the local manifestations of systemic diseases as they appear in the hand and foot, but the patient shall be concurrently referred to a doctor of medicine or a doctor of osteopathic medicine and surgery for the treatment of the systemic disease itself. *General anesthetics may be used under this section only in colleges of podiatry approved by the medical board pursuant to section 4731.53 of the Revised Code and in hospitals approved by the joint commission on the accreditation of hospitals, or the American osteopathic association.* The use of x-ray or radium for therapeutic purposes is not permitted." (Emphasis added.)

In responding to the questions posed by CMIC concerning the subject of the use of general anesthetics by certified nurse anesthetists under the direction

of podiatrists, we believe that the Medical Board's response in the form of two letters fell within the ambit of the Medical Board's statutory authority.

The Medical Board's authority to regulate the practice of medicine takes a variety of forms. One such form is the Medical Board's authority to license medical doctors, physicians, podiatrists, and limited branch practitioners. See R.C. 4731.08, 4731.09, 4731.15, and 4731.52. The Medical Board also has the authority to revoke, suspend, or take other action against holders of these licenses. See R.C. 4731.20, 4731.22, and 4731.61. Such licensure and disciplinary powers of the Medical Board are governed by Ohio's Administrative Procedures Act, R.C. Chapter 119. See R.C. 4731.05(A).

The Medical Board also regulates the practice of medicine through the enforcement of R.C. 4731.41, 4731.43, and 4731.60, which prohibit anyone who is not licensed by the board from practicing medicine, osteopathic medicine, or podiatrist medicine, respectively. The Medical Board may enforce these statutes by seeking an injunction in court under R.C. 4731.341 or by filing criminal charges under R.C. 4731.99. See, also, R.C. 4731.39. In connection with these forms of regulation, the Medical Board has the authority to investigate alleged violations of R.C. Chapter 4731. See R.C. 4731.22(C)(1).

The Medical Board is accorded such implied powers as are necessary to carry into effect its express powers and duties. *State ex rel. Copeland v. State Medical Bd.* (1923), 107 Ohio St. 20, 24, 140 N.E. 660, 661; see *Waliga v. Bd. of Trustees of Kent State Univ.* (1986), 22 Ohio St.3d 55, 57, 22 OBR 74, 75, 488 N.E.2d 850, 852, citing *State ex rel. Corrigan v. Seminatore* (1981), 66 Ohio St.2d 459, 20 O.O.3d 388, 423 N.E.2d 105. We believe that the Medical Board's response to an inquiry from the CMIC in the form of two "opinion" letters was proper and the authority to so respond was reasonably implied from its express statutory authority to regulate the practice of medicine.

Here, the Medical Board determined that a podiatrist must function within the scope of R.C. 4731.51, which includes limiting the use of general anesthetics to approved colleges of podiatric medicine or hospitals. Otherwise, a podiatrist would be practicing medicine illegally. The Medical Board's letters constituted a reasonable method of enforcing R.C. Chapter 4731. As a result, the Medical Board has no clear legal duty to vacate such letters as requested in Lakeland's action in mandamus. Nor did Lakeland have a clear right to vacate the letters.

As a result of the foregoing, we believe the trial court's denial of Lakeland's writ of mandamus was proper. Lakeland's assignment of error is overruled.

## II

Appellant's second assignment of error states:

"The lower court erred in holding that an action in the Court of Claims for damages is an adequate remedy at law which prevents the issuance of a writ of mandamus to correct an abuse of discretion on the part of members and employees of a state board for facts that are outside the scope of their official capacities."

The trial court held that Lakeland had an adequate remedy at law by way of the claim it filed in the Court of Claims in which it sought compensatory damages against the Medical Board for the intentional tort of interference with a business relationship. Lakeland asserts that the trial court erred because, under the circumstances, the remedy in the Court of Claims was not adequate. Lakeland contends that the compensatory damages sought in the Court of Claims could not provide the relief sought in the form of correcting the Medical Board's abuse of discretion which resulted from release of the two "opinion" letters.

■ For a remedy at law to be adequate, the remedy should be complete in its nature, beneficial and speedy. *State ex rel. Liberty Mills, Inc. v. Locker* (1986), 22 Ohio St.3d 102, 104, 22 OBR 136, 137, 488 N.E.2d 883, 885. Such question hinges on whether the remedy is adequate under the circumstances. *State ex rel. Butler v. Demis* (1981), 66 Ohio St.2d 123, 124, 20 O.O.3d 121, 122, 420 N.E.2d 116, 117.

■ The Ohio Court of Claims has full equity powers in all actions within its jurisdiction. R.C. 2743.03(A)(1). R.C. 2743.03(A)(2) provides in pertinent part:

"*If the claimant* in a civil action as described in division (A)(1) of this section *also files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state* that arises out of the same circumstances that gave rise to the civil action described in division (A)(1) of this section, *the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action.*" (Emphasis added.)

In its action for mandamus, Lakeland sought an order compelling the Medical Board to vacate the letters of March 17, 1987 and August 11, 1988. Lakeland could have requested the same relief in the Court of Claims by way of a declaratory judgment, request for injunctive relief, or other equitable relief. As a result, we believe that Lakeland had an adequate remedy at law.

Appellant's assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FRANCIS E. SWEENEY and SPELLACY, JJ., concur.