**MOSLER, INC., Appellee,**

v.

**UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 1862; RYAN, Appellant.**

[Cite as *Mosler, Inc. v. United Auto., Aerospace & Agricultural Implement Workers of Am., Local 1862* (1993), 91 Ohio App.3d 840.]

Court of Appeals of Ohio,
Butler County.

No. CA93–04–078.

Decided Dec. 6, 1993.

*Frost & Jacobs* and *Thomas A. Swope,* for appellee.

*Cloppert, Portman, Sauter, Latanick & Foley, Frederick G. Cloppert, Jr.* and *Michael J. Hunter,* for appellant.

KOEHLER, Judge.

Defendant-appellant, Thomas E. Ryan, appeals a decision of the Butler County Court of Common Pleas finding him in contempt.

· Plaintiff-appellee, Mosler, Inc. ("Mosler"), and defendant, United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1862 ("union"), were involved in an acrimonious labor dispute. In July 1992, Mosler filed a complaint against the union and its officers, including Ryan, seeking an injunction preventing striking union members from engaging in certain activities. On August 13, 1992, the trial court issued an injunction which, among other things, enjoined picketers from "[p]hysically interfering with, intimidating, coercing, whether by use of threats or otherwise," Mosler employees.

On October 21, 1992, the trial court issued a show cause order directing the union and several of its members to show why they should not be held in contempt for violating the provisions of the injunction. Ryan was not one of the

members named in the show cause order. Pursuant to the provisions of a settlement reached by Mosler and the union, the union members admitted violating the injunction, and the trial court found them in contempt, but did not assess any penalty. The court admonished the union members that should they be "back again" the maximum penalty they could receive would be a $500 fine and sixty days in jail.

A second show cause order was issued by the trial court against the union and one of its members on December 23, 1992. Again, Ryan was not named in the show cause order. Following a hearing, the court declined to make a contempt finding, but it did indicate that if there were any serious threats of violence, then "that person is going to go to jail."

On March 17, 1993, a third show cause order was issued against the union and several of its members, including Ryan. It alleged that Ryan had physically assaulted a Mosler employee and that other union members had picketed in groups of more than two in violation of the injunction.

After a hearing on April 22, 1993, at which Ryan was present and represented by counsel, the court dismissed the charges against the union and its members who allegedly violated the injunction by having an excess number of pickets. As to Ryan, the court specifically found that he was not acting on behalf of the union at the time of the assault. The court concluded that Ryan's acts constituted a violation of the preliminary injunction, and therefore he was in contempt of court. The court sentenced Ryan to serve five days in jail. This appeal followed.

Ryan presents two assignments of error for review. In his first assignment of error, Ryan states "[t]he trial court's imposition of imprisonment as punishment for appellant's violation of the injunction was an abuse of its power of contempt, and exceeded the scope of its remedial authority, in a civil contempt proceeding." He argues that because the proceeding in the trial court involved civil contempt, he could not be subject to imprisonment for criminal contempt. Ryan also argues that he was denied due process since he was not given adequate notice of the charge against him. We find this assignment of error to be well taken.

We agree with the parties' contention that Ryan was found guilty of criminal contempt because he was given an unconditional sentence, the purpose of which was to punish him for his disobedience and to vindicate the authority of the court. *Denovchek v. Bd. of Trumbull Cty. Commrs.* (1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362, 1364–1365; *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 253–254, 18 O.O.3d 446, 448–449, 416 N.E.2d 610, 612–613. The most important consequence arising from the classification of contempt as criminal rather than civil is that many of the significant constitutional safeguards required in criminal trials are also required in criminal contempt proceedings. *State v.*

*Kilbane* (1980), 61 Ohio St.2d 201, 205, 15 O.O.3d 221, 223–224, 400 N.E.2d 386, 390. "[B]ecause contempt proceedings affect personal liberty, the proceedings and the statutes governing them must be strictly construed." *State v. Local Union 5760, United Steelworkers of Am.* (1961), 172 Ohio St. 75, 83, 15 O.O.2d 133, 138, 173 N.E.2d 331, 338, overruled on other grounds, *Brown, supra.*

An alleged contemnor is entitled to notice of the charges against him or her. R.C. 2705.03; *Arthur Young & Co. v. Kelly* (1990), 68 Ohio App.3d 287, 299, 588 N.E.2d 233, 241–242. Constitutional due process requires that one charged with contempt be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. *Courtney v. Courtney* (1984), 16 Ohio App.3d 329, 333, 16 OBR 377, 382, 475 N.E.2d 1284, 1289–1290. See, also, *Cincinnati v. Cincinnati Dist. Counsel 51* (1973), 35 Ohio St.2d 197, 203, 64 O.O.2d 129, 133, 299 N.E.2d 686, 692. Notice, to comply with due process requirements, must set forth the alleged misconduct with particularity. Due process of law does not allow a hearing to be held without giving the defendants " 'timely notice * * * of the *specific issues that they must meet.*' " (Emphasis sic.) *State ex rel. Johnson v. Perry Cty. Court* (1986), 25 Ohio St.3d 53, 57–58, 25 OBR 77, 80–81, 495 N.E.2d 16, 25, quoting *In re Gault* (1967), 387 U.S. 1, 33–34, 87 S.Ct. 1428, 1446–1447, 18 L.Ed.2d 527, 549–550.

In *Gompers v. Buck's Stove & Range Co.* (1911), 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, the United States Supreme Court discussed the difference between civil and criminal contempt. In that case, union members had violated the terms of an injunction by publishing an "unfair list" and by advocating a boycott against the employer. They were found in contempt and sentenced to a jail term. The court stated:

"If, then, as the court of appeals correctly held, the sentence was wholly punitive, it could have been properly imposed only in a criminal proceeding instituted and tried as for criminal contempt. * * *

" * * * *

"Proceedings for civil contempt are between the original parties, and are instituted and tried as part of the main cause. But, on the other hand, proceedings at law for criminal contempt are between the public and the defendant, and are not a part of the original cause. The court of appeals, recognizing this difference, held that this was not a part of the equity cause of the *Buck's Stove & Range Co. v. American Federation of Labor* [219 U.S. 581, 31 S.Ct. 472, 55 L.Ed. 345] and said that 'the order finding defendants guilty of contempt was not an interlocutory order in the injunction proceeding. It was a separate action, one personal to the defendants, with the defendants on one side and the court vindicating its authority on the other.'

"In this view we cannot concur. We find nothing in the record indicating that this was a proceeding with the court, or more properly the government, on one side and the defendants on the other. On the contrary, the contempt proceedings were instituted, entitled, tried, and, up to the moment of sentence, treated as part of the original cause in equity. The Buck's Stove & Range Co. was not only the nominal, but the actual, party on the one side with the defendants on the other." *Id.* at 444–445, 31 S.Ct. at 499, 55 L.Ed. at 807.

After noting that the case was titled as a civil case, styled as the employer versus the defendants rather than a criminal case styled as the United States versus the defendants, the court went on to state:

"This is not a mere matter of form, for manifestly every citizen, however unlearned in the law, by mere inspection of the papers in contempt proceedings ought to be able to see whether it was instituted for private litigation or for public prosecution, whether it sought to benefit the complainant or vindicate the court's authority. He should not be left in doubt as to whether relief or punishment was the object in view. He is not only entitled to be informed of the nature of the charge against him, but to know that it is a charge, and not a suit." *Id.* at 446, 31 S.Ct. at 500, 55 L.Ed. at 807–808.

█ In the present case, the proceedings had all been civil in nature, a continuation of the original action in equity instituted by Mosler to enjoin the union and its members from engaging in certain activity. The motions and orders were all styled, as had been the original complaint for the injunction, as Mosler versus the union and its members. The contempt proceedings were instituted by Mosler, were conducted for its benefit, and were therefore in the nature of civil contempt. *Brown, supra,* 64 Ohio St.2d at 253, 18 O.O.3d at 448, 416 N.E.2d at 612–613; *Con Tex, Inc. v. Consol. Tech., Inc.* (1988), 40 Ohio App.3d 94, 96, 531 N.E.2d 1353, 1356. The completely civil nature of the case is illustrated by the language of the third show cause order, which states, "[i]t is ordered that Defendant Union and * * * Thomas E. Ryan * * * shall show cause before this court * * * why an order should not be issued adjudging that they are in contempt of this court and granting such *restitutionary and compensatory relief to the Plaintiff* as may be proper." (Emphasis added.) Following *Gompers,* imposition of criminal contempt punishment was beyond the scope of the court's authority given the nature of the proceedings.

Further, Ryan had no notice that he would be subject to criminal penalties. While R.C. 2705.05, which sets out the punishments for indirect contempt, allows for imprisonment, it does not make the distinction between civil and criminal contempt proceedings. The show cause order discussed only compensation or renumeration to Mosler; it did not tell Ryan specifically he would be subject to criminal penalties. Mosler relies heavily on the earlier court proceedings where

the court indicated that jail terms were possible. Ryan, though a defendant in the original injunction action, was not named in either of the earlier show cause orders, and there is no indication in the record that he was present at those hearings.

Even if we were to conclude that he received constructive notice of those proceedings through the union, the court had said that if any of those named in the first show cause order were "back again," jail time would be imposed. However, Ryan was not "back again"; this was his first offense, the first time he had come to court on a show cause order, and not a second offense of any kind. Further, simply because the court warned that second offenders might be subjected to jail sentences in the civil contempt proceedings does not provide adequate notice that a subsequent show cause order would result in criminal penalties. Certainly, the court could have warned that subsequent offenses by the same parties could be viewed as crimes against the state and be subject to criminal contempt proceedings, but it did not do so.

We conclude that the trial court abused its discretion in assessing a penalty for criminal contempt in a civil proceeding when the defendant had only reason to believe he could be subject to civil contempt. *Arthur Young, supra,* 68 Ohio App.3d at 302, 588 N.E.2d at 243–244. Ryan was not given adequate and specific notice of the charge against him as required by due process. Accordingly, we sustain Ryan's first assignment of error. We reverse the judgment of the trial court finding him in contempt and sentencing him to five days in jail and remand the matter for further proceedings that comport with due process.

Because we have found merit in Ryan's first assignment of error and have remanded the matter for a new hearing, we find Ryan's second assignment of error to be moot, and we decline to address it.

*Judgment reversed*
*and cause remanded.*

WALSH, J., concurs.

JONES, P.J., dissents.

JONES, Presiding Judge, dissenting.

I find it patently offensive to find appellant had no expectation of punishment when he deliberately assaulted a fellow employee. It is true that the *union* would not necessarily be in contempt for an unauthorized act of one of its officers, but the trial court properly found Ryan was accountable for his own acts. It is indulging in fiction to suggest Ryan was not well aware that his conduct not only violated Ohio law but the order of the court as well. The opinion of the majority

effectually denies the trial court the ability to enforce orders of the court. We should not grant our imprimatur to those who flagrantly violate an order designed to keep the peace during the turmoil of a strike, simply because the violator is a member of the striking union, and the Ohio Supreme Court has so held, recently, in *Midland Steel Prods. Co. v. U.A.W. Local 486* (1991), 61 Ohio St.3d 121, 573 N.E.2d 98. *Midland* is on point with similar facts. The trial court was correct, and I would affirm.