OPINION
On July 23, 1999, relators, Robert Corn, M.D. and Highland Musculo-Skeletal Associates, Inc. ("HMSA"), Dr. Corn's employer, filed a verified complaint seeking writs of prohibition and mandamus against respondent, Judge Nancy Russo. Relators claim (1) that respondent is without jurisdiction to conduct further proceedings in the case entitled Crow v. Dotson, C.P. Case No. CV-345899, including a contempt hearing, following the filing of a Stipulation for Dismissal and (2) that respondent has violated previous orders of this court issued in State ex rel. Corn v.Russo (June 4, 1999), Cuyahoga App. No. 75349, unreported (hereinafter "Corn v. Russo I"). On July 23, 1999, this court granted relators' application for alternative writs of prohibition and mandamus and ordered respondent to show cause why permanent writs should not be issued. In reply, respondent moved to dismiss or, in the alternative, moved for summary judgment. For the reasons that follow, we grant respondent's motion in part and deny it in part and issue a permanent writ of prohibition.
 I. FACTS/PROCEDURAL, HISTORY
Dr. Corn was an expert medical witness for the defense in theCrow litigation, which was pending before respondent. On July 27, 1998, a Civ.R. 45 subpoena was issued to Dr. Corn and others commanding Dr. Corn, et al. to produce the following records and documents:
 (1) All 1099 Forms received by Doctor Corn from any liability insurance carrier or any law firm or attorney and/or records showing income received from such sources for the years 1991 through 1997;
 (2) Any and all office records showing independent medical exams (IME's) conducted by Doctor Corn for the years 1991 through 1997, including, but not limited to, appointment books, computerized records and billing statements and all IME reports authorized by Doctor Corn for said IME.
Dr. Corn filed a Motion to Quash the Subpoena. On September 4, 1998, respondent denied the motion to quash and ordered Dr. Corn "to comply with all terms of the subpoena. Failure to comply in a timely fashion will be deemed contempt. Documents to be produced to plaintiff on or before 9/14/98."
On September 16, 1998, plaintiffs' counsel in Crow,
dissatisfied with Dr. Corn's response to the subpoena, filed a Motion in Limine seeking to bar the testimony of Dr. Corn. Attached as Exhibit 1 to the Motion in Limine was a letter dated September 14, 1998, sent via facsimile and mail, in which Dr. Corn, through counsel, responded to the subpoena, made available the material he possessed, and indicated what documents did not exist and why.
On September 22, 1998, respondent ordered Dr. Corn "to appear before this court on 9/28/98 at 9:30 A.M. to show cause why he should not be held in contempt for failure to abide by this court's orders regarding production of documents, pursuant to subpoena in this case." On September 23, Dr. Corn's counsel moved to cancel the show cause hearing based upon Dr. Corn's compliance with respondent's order, which motion respondent denied.
On September 28, 1998, respondent ordered "Special Master Bob Housel," who was appointed by a different judge in unrelated litigation to investigate Dr. Corn's compensation relating to defense medical exams and whose appointment was later nullified in State ex rel. Allstate v. Gaul (May 13, 1999), Cuyahoga App. No. 75048, unreported, to give testimony and produce documents at Dr. Corn's show cause hearing. Respondent began the contempt hearing on September 28 and heard testimony from Dr. Corn, "Special Master" Housel, and an accountant for Dr. Corn and HMSA. Respondent continued the show cause hearing to October 13, and on September 29, 1998, issued subpoenas to Dr. Corn, his counsel and Dr. Corn's office personnel. Respondent also issued the following orders:
 Counsel for Dr. Corn and Plaintiff are hereby ordered to brief the following subjects * * * 1) Does the failure to keep patient records for any IME's of plaintiff or defendant constitute a violation of ORC 4731.22 (B) (6) and/or Rule 4731-11-02D; 2) What privilege, if any, attaches to appointments maintained in a physician's appointment book; 3) Whether destruction of records relating to exam of person referred to doctor for purpose of defense evaluation or plaintiff's evaluation in connection with pending litigation and/or anticipated litigation constitutes contempt; 4) Whether a pending writ in the court of appeals on an unrelated case, before another judge of this court, precludes this court from reviewing documents produced in the nonrelated case which may be relevant to the show cause hearing within.
 Dr. Corn * * * is ordered to appear on 10/13/98 [with new counsel] as [current counsel] has been subpoenaed as a witness * * *.
On October 8, 1998, relators filed a complaint in prohibition and mandamus in this court against respondent (Corn V. Russo I) to prevent respondent from conducting the contempt proceeding and to compel respondent to return federal tax documents to Dr. Corn. The court issued an alternative writ of prohibition and, in compliance, respondent issued an order sealing any and all documents related to the September 28, 1998, show cause hearing and ordered the court reporter to seal the original transcript and to refuse requests for the transcript without her prior order. On December 10, respondent voluntarily stayed the Crow matter pending resolution of the writ action against her in this court.
Unbeknownst to this court, on April 2, 1999, the parties and their attorneys in the Crow litigation executed a Settlement Agreement and Full and Final Release.
On June 4, 1999, in Corn v. Russo I, the court held that respondent had jurisdiction to proceed with the contempt hearing, but lacked jurisdiction to elicit testimony or other evidence from "Special Master" Housel and lacked jurisdiction to conduct an independent discovery investigation on a party's behalf. The court issued, in relevant part, the following permanent writ of prohibition:
 Respondent Russo is prohibited from compelling, ordering, or receiving any additional testimony, information, or documents from respondent Housel in Crow v. Dotson, Cuyahoga Common Pleas Case No. CV-345899. In addition, respondent Russo is prohibited from using, releasing, publishing, disseminating, or distributing in any fashion any information, documents, or the contents of any such documents obtained from respondent Housel, in his capacity as a Special Master. The transcript of the testimony of respondent Housel, as taken at the contempt hearing of September 28, 1998, is ordered sealed. Further, respondent Russo is ordered to deliver to relator Corn any and all information, documents and transcripts which were obtained from respondent Housel and ordered sealed in the alternative writ of prohibition issued by this Court on October 9, 1998.
On June 11, 1999, respondent lifted the stay in Crow, reactivated all pending motions and reinstated all previous court orders, except that the parties were notified that a brief on the issue concerning a review of documents during a pending writ action was no longer required. Respondent required all remaining issues in her September 28, 1998, order to be briefed and continued the contempt hearing to July 6, 1999. Respondent also vacated her order of October 13, 1998, which sealed documents pursuant to the alternative writ issued in Corn v. Russo I.
On July 2, 1999, the plaintiffs in Crow filed a Stipulation for Dismissal and Judgment Entry with respondent.[1] Respondent suasponte rescheduled the contempt hearing for July 27.
On July 7, 1999, respondent issued the following order: "Court clarifies its order to state that the Court vacates its prior ruling sealing the transcripts of the hearing held 9/28/98, except that the transcript of testimony offered by Robert Housel is to remain sealed."
On July 23, 1999, relators commenced this action as a result of the various orders of respondent in Crow following the issuance of a writ of prohibition in Corn v. Russo I on June 4, 1999, and the filing of the Stipulation for Dismissal in Crow on July 2, 1999.
 II. LAW AND DISCUSSION A. Prohibition
For a writ of prohibition to be issued, the relator(s) must establish that (1) the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power, (2) the exercise of such power is unauthorized by law, and (3) the refusal of the writ would result in injury for which there exists no adequate remedy in the ordinary course of law. Stateex rel. McKee v. Cooper (1974), 40 Ohio St.2d 65, 320 N.E.2d 286, paragraph one of the syllabus. The existence of an adequate remedy, however, is immaterial to the issuance of a writ of prohibition if a court is completely without jurisdiction to proceed. State ex rel. Rice v. McGrath (1991), 62 Ohio St.3d 70,577 N.E.2d 1100; State ex rel. Sanquily v. Lucas County Court ofCommon Pleas (1991), 60 Ohio St.3d 78, 573 N.E.2d 606; State exrel. Tollis v. Cuyahoga County Court of Appeals (1988), 40 Ohio St.3d 145,532 N.E.2d 727. Relators are seeking a permanent writ of prohibition in three counts of their complaint.
 1. Stipulated Dismissal of Crow
Relators claim in Count One of their Complaint that the filing of the Stipulation for Dismissal and Judgment Entry divested respondent of jurisdiction to conduct any further proceedings in Crow, including the contempt hearing. Relators maintain that the stipulated dismissal was pursuant to Civ.R. 41 (A) (1) (b) and was therefore effective upon filing. Respondent contends that the dismissal was pursuant to Civ.R. 41 (A) (2) and, as such, required her signature, filing with the clerk of court, and journalization before the dismissal became effective.
The stipulated dismissal entry is titled "Stipulation for Dismissal and Judgment Entry" and provides as follows:
 We, the attorneys for the respective parties, do hereby stipulate that any and all claims, counterclaims, and third-party claims of Plaintiffs against the Defendants are settled and dismissed, with prejudice, at Defendants (sic) costs and that the Court may enter an order accordingly, notice by the Clerk hereby being waived. The attorneys for the respective parties do further stipulate and agree that any and any (sic) claims and third-party claims of Third-Party Plaintiff, Deborah L. Dotson, individually and as Executrix for the Estate of Douglas Dotson, against Third-Party Defendant, Farmers Insurance of Columbus, Inc., are settled and dismissed, with prejudice and, that the Court may enter an order accordingly, notice by the Clerk hereby being waived. The parties further stipulate that the dismissal will not impact upon the current Eighth District Court of Appeals, Case Number 75349.
IT IS SO ORDERED.
The dismissal entry is signed by all parties to the case through their attorneys and there is a signature line for respondent. Respondent states that clearly the parties intended for the dismissal to be effective only upon her execution thereof "upon such terms and conditions as the court deems proper" per Civ.R. 41 (A) (2). The substance of the language in the entry belies this contention. The dismissal entry is not a motion for dismissal, which is the preferred means of obtaining a Civ.R. 41 (A) (2) order of dismissal. Andrews v. Sajar Plastics, Inc.
(1994), 98 Ohio App.3d 61, 66, 647 N.E.2d 854; Staff Notes to Civ. R. 41. The entry herein contains no "moving" words. The language of the stipulated dismissal "that the Court may enter an order accordingly" makes it clear that the dismissal of the lawsuit was not contingent upon the court's approval, as required in Civ.R. 41 (A) (2), but that the entry was in the nature of a notice or courtesy to the court of the parties' settlement and stipulated dismissal of their claims. In fact, the parties waived notice by the clerk of court of whether the court actually signed the order. This waiver of notice is further evidence of the parties' intent that no further action by the court was anticipated or needed prior to their dismissal being effective.[2] Finally, respondent has submitted no evidence from the Crow parties to support her position. It is thus clear to this court that the stipulated dismissal signed by all counsel and filed with respondent by plaintiff was pursuant to Civ.R. 41 (A) (1).
The filing of a Civ.R. 41 (A) (1) dismissal requires no further action by the court to be effective. Howard v. Fiyalko (Oct. 29, 1998), Cuyahoga App. No. 74308, unreported. Respondent contends that the entry was not filed with the clerk of court. Civ.R. 41 (A), however, does not specifically require that the dismissal entry be filed with the clerk of court. Cf. Piper v. Burden
(1984), 16 Ohio App.3d 361, 476 N.E.2d 386. Civ.R. 5 (E) allows for filing with the judge if so permitted. Respondent does not contest the filing of the stipulated dismissal with her pursuant to Civ.R. 5 (E). Nor does she contest noting the filing date, July 2, 1999, on the entry as required by Civ.R. 5 (E). The lone failure of respondent to "forthwith transmit" the dismissal entry to the clerk of court as required by Civ.R. 5 (E), which might subject respondent to an action in mandamus, should not interfere with or negate the fact that the parties' stipulated dismissal entry was properly filed with the court.
At the time a case is dismissed pursuant to Civ.R. 41 (A) (1), a court loses jurisdiction to proceed in the matter and a writ of prohibition will issue to prevent the exercise of jurisdiction by the court. State ex rel. Fogle v. Steiner (1995),74 Ohio St.3d 158, 656 N.E.2d 1288; State ex rel. Hunt v.Thompson (1992), 63 Ohio St.3d 182, 586 N.E.2d 107. The stipulated dismissal of Crow was effected on July 2, 1999, with the filing of the Stipulation for Dismissal with respondent. Consequently, as of July 2, 1999, respondent patently and unambiguously lacked jurisdiction to conduct further proceedings in Crow. A writ of prohibition will issue to prevent respondent from exercising jurisdiction over any pending motions in the Crow litigation which respondent reactivated pursuant to her order of June 11, 1999.
Relators argue that not only does respondent lack jurisdiction over substantive matters in the Crow litigation, but she also lacks jurisdiction to continue the contempt hearing due to the stipulated dismissal of Crow. Relators rely upon State ex rel.Rice v. McGrath (1991), 62 Ohio St.3d 70, 577 N.E.2d 1100, for the proposition that respondent lacks jurisdiction even in contempt because the underlying litigation has been dismissed. InRice v. McGrath, however, the contempt hearing was stemming from an order of dismissal of a declaratory judgment action based uponres judicata principles. In the order of contempt, the respondent trial court addressed the merits of the parties' lawsuit, a lawsuit which had already been litigated in the administrative arena and through subsequent appeals. The trial court had not entered any order in the declaratory judgment action which could have been subject to a motion to show cause as a collateral matter. The dismissal of the declaratory judgment action, therefore, divested the trial court of any further jurisdiction in the matter. In the case sub judice, unlike the court in Rice,
respondent has issued an order in the underlying Crow matter, the disobedience of which could survive as a collateral matter.
Respondent contends that even if the Crow litigation is deemed dismissed, she still retains jurisdiction to continue the show cause hearing against Dr. Corn based upon the inherent authority of the court to punish contempts and based upon Chapter 2705 of the Ohio Revised Code. A Civ.R. 41 (A) (1) dismissal does not divest a court of jurisdiction to conduct a contempt hearing for disobedience of its orders. State ex rel. Gentry v. Jones (Jan. 22, 1997), Cuyahoga App. No. 71635, unreported. A court has jurisdiction to consider collateral matters even when an action is voluntarily dismissed. State ex rel. Richard v. CuyahogaCounty Board of Commissioners (1995), 100 Ohio App.3d 592,654 N.E.2d 443; State ex rel. J. Richard Gaier Co., L.P.A. v. Kessler
(1994), 97 Ohio App.3d 782, 647 N.E.2d 564. Respondent does not have the authority, however, to continue the contempt hearing in this case and the pursuit of Dr. Corn's and/or HMSA's documents for the following reasons.
A court has jurisdiction to punish the disobedience of its orders pursuant to its inherent powers of contempt and pursuant to R.C. 2705.01 (A). Zakany v. Zakany (1984), 9 Ohio St.3d 192,459 N.E.2d 870. syllabus. Contempt proceedings are generally suigeneris, that is, neither civil actions nor criminal prosecutions. Denovchek v. Board of Trumbull County Commissioners
(1988), 36 Ohio St.3d 14, 16, 520 N.E.2d 1362;State v. Timson (1974), 38 Ohio St.2d 122,311 N.E.2d 16, paragraph three of the syllabus. When necessary, however, contempt proceedings may be classified as either "civil" or "criminal" as follows:
 The distinction between civil and criminal contempt is based on the character and purpose of the contempt sanctions. [citation omitted.] If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. [citation omitted.] Often, civil contempt is characterized by conditional sanctions, i.e.,
the contemnor is imprisoned until he obeys the court order. [citation omitted.] Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence or fine. [citation omitted.] Its sanctions are punitive in nature, designed to vindicate the authority of the court. [citations omitted.]
Id.
The contempt hearing in this matter began on September 28, 1998. At that time, Corn v. Russo I had not been decided and the Crow litigation was still pending. It is apparent from the transcript of the September 28 proceedings that the contempt hearing being conducted was patently for the benefit of the Crow plaintiffs. Respondent opened the hearing with plaintiffs' counsel questioning Dr. Corn as if on cross-examination. Tr. 7. Plaintiffs' counsel indicated he was acting on behalf of the Crow plaintiffs. Id. Respondent permitted questions regarding the substance of documents, e.g., Tr. 59-60, forced Dr. Corn to sign tax information release forms under her threat of direct contempt, and ordered the production of documents that were not requested in plaintiffs' subpoena, Tr. 17, 90, 157-58. After respondent questioned Dr. Corn, respondent asked plaintiffs' counsel if he had anything more based upon the court's examination. Tr. 90-91. In addition, respondent permitted plaintiffs to call witnesses, including "Special Master" Housel, who, pursuant to the transcript filed under seal in this case, provided testimony and documents, many of which were under a protective order in a different case. Respondent continued the contempt hearing for Dr. Corn to produce records which were not requested in the plaintiffs' subpoena referred to in respondent's order of September 4, 1998, the alleged violation of which was the impetus for the contempt hearing.
It is evident from the course of the September 28th contempt hearing that the proceedings were coercive in nature and designed to compel the production of documents for the benefit of the Crow plaintiffs. From their initiation, the court made no effort to afford the contemnor, Dr. Corn, the necessary due process safeguards attendant to a criminal contempt proceeding. See,e.g., Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 416 N.E.2d 610; Mosler, Inc. v. United Auto, Aerospace Agricultural Implement Workers of Am., Local 1862 (1993),91 Ohio App.3d 840, 633 N.E.2d 1193. In short, these contempt proceedings were civil rather than criminal.
Now that the Crow litigation has been settled and dismissed, the civil contempt hearing for the benefit of the plaintiffs must also end. The pursuit of documents from Dr. Corn and from others about Dr. Corn, his recordkeeping practices, his patients, his opinions, the business of HMSA, etc. is over. With the dismissal of Crow, respondent has been divested of jurisdiction to force discovery for the plaintiffs or in any other way to address the merit issues in Crow. Accordingly, a writ of prohibition will issue in this regard.
 2. Unsealing/Sealing Transcripts
Relators contend in Count Two of their Complaint that respondent directly violated the order in Corn v. Russo I by issuing her handwritten order on June 11, 1999, unsealing the transcript of the September 28, 1998, contempt hearing, which included the sealed testimony of "Special Master" Housel, and that respondent had no authority to clarify that order after the dismissal of Crow. Respondent provided no evidence with respect to this claim, but argues in her brief that her entry constituted a Civ.R. 60 (A) clerical mistake. On June 11, 1999, the Crow litigation had not yet been dismissed and respondent clearly had jurisdiction to enter the June 11 order. Whether that order constituted a violation of Corn v. Russo I or was merely a clerical mistake that could be corrected nunc pro tunc is an issue for which relators have an adequate remedy. Relators may file a show cause motion in Corn v. Russo I to challenge respondent's order as a contempt of the Corn v. Russo I mandate. The availability of a show cause motion provides an adequate remedy which will preclude extraordinary relief. State ex rel.Hall v. Watkins (Feb. 19, 1998), Cuyahoga App. No. 72833, unreported; cf. Berthelot v. Dezso (1999), 86 Ohio St.3d 257
(remand mandate). Additionally, the court in Corn v. Russo I is in the best position to determine if its order or writ has been disobeyed. See State ex rel. Bitter v. Missig (1995), 72 Ohio St.3d 249, 648 N.E.2d 1355.
 3. RC. 4731.22 (B) (6) Investigation
In Count Three of their Complaint, relators maintain that respondent is about to conduct an investigation of Dr. Corn that is beyond her jurisdiction. During the September 28 contempt hearing, respondent questioned relator Corn concerning his familiarity with R.C. 4731.22 (B) (6), Tr. 80-81, and issued an order requiring counsel for plaintiffs and counsel for Dr. Corn to brief the issue of whether the failure to keep patient records of independent medical examinations of plaintiffs or defendants constituted a violation of R.C. 4731.22 (B) (6). On June 11, 1999, following Corn v. Russo I, respondent reinstated this order.
This court has already concluded that respondent is without jurisdiction to continue the contempt hearing against Dr. Corn. That finding in the normal course would moot the necessity of addressing this count of relators' complaint. However, based upon the history of the pursuit of Dr. Corn's financial and other records, see Corn v. Russo I and Allstate v. Gaul, supra, we find the issue presented in this count of relators' complaint concerning a R.C. 4731.22 (B) (6) investigation capable of repetition, yet evading review, and will address it on its merits. See State ex rel. Beacon Journal Publishing Co. v.Donaldson (1992), 163 Ohio St.3d 173, 586 N.E.2d 101.
Chapter 4731 of the Ohio Revised Code governs the practice of medicine in this state. The very first section provides for the appointment of a state medical board by the governor with the advice and consent of the senate, R.C. 4731.01, to carry out the purposes of the chapter, R.C. 4731.05. The section referred to in respondent's reactivated order, R.C. 4731.22 (B) (6), provides as follows:
 4731.22 GROUNDS FOR REFUSAL TO GRANT AND REVOCATION OF CERTIFICATE; HEARING AND INVESTIGATION; REPORT; MEDICAL EXAMINATIONS; AUTOMATIC SUSPENSION; QUALITY INTERVENTION PROGRAM.
* * *
 (B) The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
* * *
 (6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.]
This particular section enumerates a circumstance for which the state medical board is authorized to discipline a licensed physician. Relators have claimed that respondent is without jurisdiction to investigate Dr. Corn's compliance with R.C. 4731.22
(B) (2) since such an investigation is analogous to the independent investigation prohibited in State ex rel. Allstate v.Gaul (May 13, 1999), Cuyahoga App. No. 75048, unreported, and since such an investigation is the exclusive responsibility of the state medical board.
In her show cause reply, respondent contends that she was "merely asserting her inherent jurisdiction to punish contempts" and that she was not attempting to conduct an investigation of relator Corn's compliance with R.C. 4731.22 (B) (6). But yet that is exactly the issue respondent ordered briefed. Respondent relies solely on her "inherent powers" of contempt and makes no other claim of jurisdiction which permits her to investigate whether violations of R.C. 4731.22 (B) (6) occurred.
The inherent powers of the court in contempt are not infinite. Contempt powers cannot be used to shield a patent excess or usurpation of authority or lack of jurisdiction. State ex rel.Bradley v. Stralka (Sept. 2, 1999), Cuyahoga App. No. 76212, unreported. State medical board members and their investigators are specifically empowered to investigate alleged violations of the provisions of Chapter 4731 pursuant to R.C. 4731.05 and 4731. 22 (F), and it is the board that determines whether a violation has occurred and the consequences for such violation, R.C. 4731.22
(G). All investigations are conducted pursuant to R.C. 4731.22
and the rules adopted by the state medical board pursuant to R.C.4731.05. In addition, pursuant to R.C. 4731.39, enforcement powers of the laws relating to the practice of medicine are bestowed upon the secretary of the state medical board. Nowhere in R.C. 4731.22 or 4731.39 is jurisdiction granted to the court of common pleas to initiate an investigation and decide whether a violation of one of the provisions of R.C. 4731.22 has occurred.
The issue of whether a R.C. 4731.22 violation has occurred is completely remediable through the administrative processes provided for in Chapter 4731 of the Revised Code. Cf. State exrel. Banc One Corp. v. Walker (1999), 86 Ohio St.3d 169,712 N.E.2d 742. With respect to the authority of the state medical board, this court has stated:
 The Medical Board's authority to regulate the practice of medicine takes a variety of forms. One such form is the Medical Board's authority to license medical doctors, physicians, podiatrists, and limited branch practitioners. See R.C. 4731.08, 4731.09, 4731. 15 and 4731.52. The Medical Board also has the authority to revoke, suspend, or take other action against holders of these licenses. See R.C. 4731.20, 4731.22, and 4731.61. Such licensure and disciplinary powers of the Medical Board are governed by Ohio's Administrative Procedures Act, R.C. Chapter 119. See R.C. 4731.05 (A).
 The Medical Board also regulates the practice of medicine through the enforcement of R.C. 4731.41, 4731.43, and 4731.60, which prohibit anyone who is not licensed by the board from practicing medicine, osteopathic medicine, or podiatrist medicine, respectively. The Medical Board may enforce these statutes by seeking an injunction in court under R.C. 4731.341 or by filing criminal charges under R.C. 4731.99. See, also, R.C. 4731.39. In connection with these forms of regulation, the Medical Board has the authority to investigate alleged violations of R.C. Chapter 4731. See R.C. 4731.22 (C) (1)
State ex rel. Lakeland Anesthesia Group, Inc. v. Ohio StateMedical Board (1991), 74 Ohio App.3d 643. 648, 600 N.E.2d 270. The board is also accorded such implied powers as are necessary to effect the board's express powers and duties. Id. "[W]here the General Assembly has enacted a complete, comprehensive and adequate statutory scheme governing review by an administrative agency, exclusive jurisdiction may be held to lie with such an agency." State ex rel. Geauga County Budget Commission v. Courtof Appeals for Geauga County (1982), 1 Ohio St.3d 110,438 N.E.2d 428. Our review of the entire statutory scheme enacted by the legislature for investigating and determining violations of R.C.4731.22 leads us to conclude that such provisions are complete, comprehensive and adequate. Thus, we hold that, unless expressly stated otherwise in Chapter 4731, the state medical board has exclusive jurisdiction for investigating and determining, pursuant to Chapter 4731 of the Revised Code, whether a provision of R.C. 4731.22 has been violated. The attempt by respondent to investigate and determine violations of R.C. 4731.22 is a usurpation of the authority of the state medical board for which the writ of prohibition will lie.
Respondent not only lacks the authority to investigate and determine whether a R.C. 4731.22 (B) (6) violation has occurred, but she also lacks the power to review any decision of the state medical board regarding such violations. All adjudications of the state medical board are conducted in accord with Chapter 119 of the Revised Code. R.C. 4731.05 (A). Article IV, Section 4 of the Ohio Constitution vests powers of review of proceedings of administrative officers and agencies in courts of common pleas as the law may provide. The law provides that appeals from decisions of the state medical board "shall be to the court of common pleas of Franklin county." R.C. 119.12. The court of common pleas in Cuyahoga County has no authority to review a decision of the state medical board.
Of course respondent may report a suspected violation of R.C.4731.22 to the state medical board. "Any person" may do so. R.C.4731.22 (F) (1). But neither the inherent powers of contempt nor the statutes governing contempt permit respondent to investigate and determine whether the failure to keep patient records for plaintiff/defendant independent medical examinations constitutes a violation of R.C. 4731.22 (B) (6), as ordered by respondent on June 11, 1999.
 B. Mandamus
In order to obtain the extraordinary writ of mandamus, a relator must demonstrate that he has a clear legal right to the relief requested, that the respondent is under a clear legal duty to perform the requested act, and that the relator has no plain and adequate remedy at law. State ex rel. Westchester v. Bacon
(1980), 61 Ohio St.2d 42, 399 N.E.2d 81, paragraph one of the syllabus.
 1. Noncompliance with Corn v. Russo I.
Relators claim in Count Four of their Complaint that all of the material ordered to be returned to Dr. Corn in Corn v. Russo I
may not have been delivered as there has been no certification by respondent of full compliance. In her show cause reply, through counsel for respondent and not by way of respondent's affidavit, respondent alleges that "any and all information, documents and transcripts which were obtained from Housel and ordered sealed" were delivered to counsel for relators. Again, if relators are uncertain whether respondent has fully complied with the writ issued in Corn v. Russo I, relators may file a motion to show cause in that case. The availability of a motion to show cause is an adequate remedy which will preclude the issuance of a writ of mandamus. State ex rel. Hall v. Watkins (Feb. 19, 1998), Cuyahoga App. No. 72833, unreported.
 III. CONCLUSION
Accordingly, having found acts of respondent to be patently and unambiguously beyond her jurisdiction and/or constituting a usurpation of authority, this court dissolves the alternative writs issued on July 23, 1999 and hereby issues a permanent writ of prohibition as follows:
In the case of Crow v. Dotson, Cuyahoga County Court of Common Pleas Case No. CV-345899. respondent, Judge Nancy Russo, is hereby prohibited from conducting any further proceedings, including the contempt hearing against Dr. Corn. Documents previously ordered sealed in Corn v. Russo I and Allstate v. Gaul
shall remain under seal absent court orders in those cases. Documents submitted under seal in this case shall be resealed and remain under seal absent an order from this court.
Writ of prohibition granted. Writ of mandamus denied. Costs to be divided equally between respondent (50%) and relators (50%).
TIMOTHY E. McMONAGLE, J., and LEO M. SPELLACY, J., CONCUR.
 _________________________________ JAMES M. PORTER ADMINISTRATIVE JUDGE
[1] The Stipulation for Dismissal and Judgment Entry is stamped "JUL 02 `99 PM 3:26" in the upper right-hand corner. Respondent has not denied receiving the Stipulation for Dismissal in her show cause response. Respondent indicates only that the Stipulation for Dismissal and Judgment Entry does not appear on the docket, has not been filed with the clerk of court, and has not been journalized.
[2] prudent practice may dictate omitting superfluous matter from a Civ.R. 41 (A) dismissal to obviate later difficulties.