OPINION
Plaintiff-appellant, Kimberly A. Case, appeals the decision of the Butler County Court of Common Pleas, Domestic Relations Division, finding her in contempt for violating a non-compete agreement entered into between Kimberly and defendant-appellee, Paul T. Case, Sr.
While married, the parties operated a trucking business, Kim Case Corp., Inc., dba Case Trucking, Inc. The parties' marriage was dissolved on April 2, 1999. Pursuant to a separation agreement filed that day, Paul received all interest in the business and, in consideration thereof, paid Kimberly $150,000. Incorporated in the separation agreement was the following non-compete agreement entered into by the parties:
 As part of the consideration for this payment, Wife agrees she shall not at any time, in any way disclose company secrets or customer lists and shall not at any time, in any way attempt directly or indirectly to damage the business conveyed to Husband. Wife further agrees she shall not become an employee or attempt to start or acquire a competing business or obtain authorities and/or permits to operate a trucking business within a Fifty (50) mile radius of the current location of Case Trucking, Inc., nor shall Wife either directly or indirectly attempt to solicit or contact existing or later acquired customers of Case Trucking, or solicit the services of truckers, employees or independent contractors of Case Trucking for at least a three (3) year period. Nor shall Wife attempt in any manner to use the name Case Trucking or any similar name involving use of the name Case or Kim Case associated with a trucking business similar in nature to that of the business she is conveying to Husband herewith. However, it is agreed by the parties that after one year from the Decree Wife may work for a competing trucking business (except Red Bank Trucking or Gary Varney Trucking) so long as she does not violate the terms set forth above.
 On October 13, 2000, Paul filed a motion for contempt against Kimberly alleging she had violated the non-compete agreement "by attempting to directly or indirectly damage [Paul's] business, solicit and/or contact [Paul's] employees, drivers, and/or independent contractors, and other actions which may become known as discovery progresses." Following a hearing on the motion and by decision filed January 2, 2001, the magistrate granted Paul's motion and found that Kimberly had violated the non-compete agreement as follows:
 Mrs. Case has been working for Chris O'Dell Trucking since May 1, 2000. Mr. O'Dell had previously driven trucks for Mr. and Mrs. Case when they were in business together. Mr. O'Dell left Case Trucking when he refused to sign a non-compete clause that Mr. Case requested. Prior to May 1, 2000, Mrs. Case was employed by Rumpke. Mrs. Case denies that she has any ownership interest in O'Dell Trucking. * * * Mrs. Case is now working in the same office in essentially the same or similar role she had working with her former husband. * * *.
 Mr. Case is now operating four different businesses, all related to Case Trucking. Case Trucking was the only corporation in existence at the time of the divorce. * * * Mrs. Case went to work for Chris O'Dell after he repeatedly called her and asked her to work for him after the one year condition in the divorce decree expired.
 * * * I find that there was no evidence that Mrs. Case has either directly or indirectly attempted to solicit or contact customers of Case Trucking in the course of her current employment with O'Dell Trucking, nor has she used her influence to solicit the services of truckers or other employees of Case Trucking. * * *.
* * *
 At this time, I find the condition contained within the covenant not to compete, which Mrs. Case is violating, is her agreement not to become an employee of a business within a 50 mile radius of Case Trucking. I find that this condition would still apply, even though after one year, she was allowed to work for a competing trucking business based on the following inclusive statement: "* * * so long as she does not violate the terms set forth above." I find that the 50 mile radius restriction is one of those terms. Thus, since O'Dell is within 50 miles of Case Trucking, Mrs. Case is guilty of contempt for violation of the order.
 Mrs. Case can purge her contempt by terminating her employment and remaining in compliance; she cannot work for a competing trucking business within 50 miles of Case Trucking.
 Kimberly filed objections to the magistrate's decision. By decision filed March 9, 2001, the trial court overruled Kimberly's objections and affirmed the magistrate's decision as follows:
 The Court finds the non-compete clause has four(4) separate and distinct prohibitions.
* * *
 The second prohibition is Ms. Case shall not become an employee or attempt to start or acquire a competing business or obtain authorities or permits to operate a trucking business within 50 miles of Case Trucking, Inc., nor directly or indirectly attempt to solicit or contact existing or later acquired customers of Case Trucking or solicit services of trucker, employees, or independent contractors of Case Trucking for at least three (3) years.
* * *
 The fourth clause of the prohibition modifies the whole, in that it grants Ms. Case the right to work for a competing trucking business (except Red Bank Trucking or Gary Varney Trucking) after one year from the Decree, as long as she does not violate the other items.
 The Court finds the Magistrate did not err in determining the non-competition clause prohibited Ms. Case from becoming an employee of a competing trucking business within a 50 mile radius of Case Trucking within a three (3) year period and therefore, finding Ms. Case in contempt.
 With regard to the second issue, the Magistrate did not err in finding Ms. Case in contempt for competing against Case Trucking, even though the original corporation name has changed. The original corporation was named after Ms. Case. After the divorce Mr. Case changed the corporate name.
 Kimberly appealed the trial court's decision and raises as her sole assignment of error that "the trial court erred in affirming the decision [of] the magistrate holding [her] in contempt for violation of the * * * decree of divorce."
A trial court's finding of contempt and the subsequent punishment for that contempt will not be disturbed on appeal absent an abuse of discretion. In re Ross Children (Aug. 30, 1999), Butler App. Nos. CA98-12-253 and CA98-12-255, unreported, at 6. An abuse of discretion will be found only when the trial court's decision is shown to be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Kimberly first argues that it was error to find her in contempt where she was not notified as to whether Paul was seeking civil or criminal contempt, and where Paul failed to specifically argue in his motion that Kimberly's contempt consisted of working for a competitor within a fifty-mile radius.
The distinction between civil and criminal contempt "turns on the character and purpose of the sanction imposed." Cleveland v. Ramsey
(1988), 56 Ohio App.3d 108, 110. Criminal contempt sanctions are "designed to vindicate the authority of the court and punish past acts of disobedience." State v. Moody (1996), 116 Ohio App.3d 176, 180. By contrast, civil contempt sanctions are "designed to benefit the complainant and to coerce, imposing punishment until an individual purges the contempt by complying with a court order." Id. "Proceedings for civil contempt are between the original parties, and are instituted and tried as part of the main cause." Gompers v. Buck's Stove Range Co.
(1911), 221 U.S. 418, 444-445, 31 S.Ct. 492, 499.
"This is not a mere matter of form, for * * * every citizen, however unlearned in the law, by mere inspection of the papers in contempt proceedings ought to be able to see whether * * * it sought to benefit the complainant or vindicate the court's authority. He should not be left in doubt as to whether relief or punishment was the object in view." Id. at 446, 31 S.Ct. at 500. In the case at bar, the proceedings had all been civil in nature, a continuation of the original divorce action instituted by Kimberly. The contempt proceedings were instituted by Paul, were conducted for his benefit, sought to coerce Kimberly into compliance with the non-compete agreement, and sought compensatory damages. We therefore find that the contempt proceedings were in the nature of civil contempt, and that Paul's motion for contempt clearly apprised Kimberly of such nature. See Mosler, Inc. v. United Auto., Aerospace AgriculturalImplement Workers of Am., Local 1862 (1993), 91 Ohio App.3d 840.
With regard to Kimberly's contention that a party filing a motion for contempt must specifically state each and every ground supporting the motion before an individual can be found in contempt on one of those grounds, we note that Kimberly has not cited, and we have not found, any cases supporting such contention. Kimberly essentially argues that the trial court erred by finding her in contempt of the non-compete agreement on grounds other than those set forth by Paul in his motion. The Ohio Supreme Court has held that in an indirect civil contempt[1]
proceeding, notice which apprises the alleged contemnor of the nature of the charge against him so that he may prepare a defense is sufficient for due process purposes. Cincinnati v. Cincinnati Dist. Council 51 (1973),35 Ohio St.2d 197, 203.
Paul's motion for contempt asserted that Kimberly had violated the non-compete agreement by "attempting to directly or indirectly damage [Paul's] business, solicit and/or contact [Paul's] employees, drivers, and/or independent contractors, and other actions which may become known as discovery progresses." We find that Paul's motion sufficiently informed Kimberly of the charges against her so as to enable her to prepare an adequate defense. See Armco, Inc. v. United Steelworkers ofAmerica (Dec. 22, 2000), Richland App. No. 00-CA-39, unreported.
Kimberly next argues that she must have intent to violate the non-compete agreement before she can be found in contempt for violating the agreement. Kimberly claims that she worked for O'Dell Trucking in good faith, believing that the non-compete agreement allowed her to do so. However, proof of purposeful, willing, or intentional violation of a court order is not a prerequisite to a finding of civil contempt. Pughv. Pugh (1984), 15 Ohio St.3d 136, 140. Similarly, a party acting innocently cannot use that innocence as a defense to a charge of civil contempt. Pedone v. Pedone (1983), 11 Ohio App.3d 164, 165. "An act does not cease to be a violation of * * * a decree merely because it may have been done innocently." McComb v. Jacksonville Paper Co. (1949),336 U.S. 187, 191, 69 S.Ct. 497, 499.
Finally, Kimberly argues the trial court erred by interpreting the non-compete agreement as prohibiting her from working for a competitor within a fifty-mile radius for three years. Kimberly asserts that since the non-compete agreement implicitly allows her to work at any time for a competitor outside of a fifty-mile radius, and since both Red Bank Trucking and Gary Varney Trucking are located within a fifty-mile radius, the non-compete agreement necessarily allows her to work for a competitor within a fifty-mile radius, other than the foregoing two companies, a year after the divorce decree. To read the non-compete agreement otherwise would render the last sentence of the non-compete agreement "totally unnecessary and totally meaningless." Kimberly also argues it was error to find her in contempt for working for a competitor of Case Trucking, Inc., an entity that no longer exists.
We disagree with Kimberly's assertion that Case Trucking, Inc. no longer exists. It is undisputed that while married, the parties operated a trucking business, Kim Case Corp., Inc., dba Case Trucking, Inc. The parties' business was evidently named after Kimberly. Paul testified that while Kim Case Corp., Inc. no longer exists, Case Trucking, Inc. still exists and is going to be "ke[pt] open four more years." Paul also testified that his business is referred to as either PTC Transport or Case Trucking. In light of the record before us, we therefore find that the trial court did not err by finding that Case Trucking, Inc. still exists.
We now turn to the trial court's interpretation of the non-compete agreement. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the contract, and common words will be given their ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall content of the instrument. Foster Wheeler Enviresponse, Inc. v. Franklin Cty.Convention Facilities Auth. (1997), 78 Ohio St.3d 353, 361.
The non-compete agreement contains four separate clauses. Of importance to this appeal are the second and fourth clauses. The second clause clearly prohibits Kimberly from working for a competitor within a fifty-mile radius for three years. The fourth clause allows Kimberly to work for a competitor after one year from the divorce decree only as longas "she does not violate the terms set forth above." Those terms necessarily include the fifty-mile radius requirement and the three-year period requirement. In other words, the second and fourth clauses of the non-compete agreement essentially and redundantly prohibit the same thing, that is, Kimberly cannot work for a competitor within a fifty-mile radius for three years. To read the fourth clause as suggested by Kimberly would render the second and fourth clauses conflicting and opposite, a manifest absurdity in light of the purpose behind the non-compete agreement. We therefore find that while the non-compete agreement might be inartfully drafted and includes a seemingly redundant clause, it nevertheless clearly prohibits Kimberly from working for a competitor within a fifty-mile radius for a three-year period. The trial court did not err by so finding.
In light of all of the foregoing, we hold that the trial court properly found Kimberly in contempt for violating the non-compete agreement. Kimberly's sole assignment of error is overruled.
WALSH and POWELL, JJ., concur.
[1] Indirect contempt is "an act or conduct that takes presence outside of the court." Moody, 116 Ohio App.3d at 180.